Alonzo C. Monson, as Executor, etc., Respondent, *v.* The New York Security and Trust Company, as Trustee, etc., et al., Appellants, Impleaded, etc., et al., Respondents.

The will of W. gave his residuary estate to his executors in trust, with power to sell and keep the same and its proceeds invested, the net rents, incomes and profits to be applied to the use of his wife during life. Upon her death the executors were directed to allot and set apart four shares "each of the value and amount of twenty thousand dollars" one for the use of each of his four daughters or her descendants during life, etc., and upon her death to divide and distribute such share "and the proceeds and investment thereof" among the descendants of the daughters, etc. The balance of the estate the testator gave to his two sons. In an action to have the rights and interests of the parties interested in the estate settled and determined, it appeared that the testator's widow died in 1878. The residuary estate was then invested in various securities. The executor did not upon the death of the widow pay over in money or allot and set apart in securities the sum of $20,000 for either of the trust funds, but kept the residuary estate undivided, paying legal interest on that sum to the respective beneficiaries and paying the balance of the income to the sons. After the death of the widow the residuary estate largely increased in value, because of the appreciation of certain of the securities. *Held*, that the daughters were entitled to share *pro rata* in the increase ; that it was not necessary, in order that each should have the benefit of her proportion, to have a formal allotment made of the shares, but by the omission of the executor to make a specific allotment he must be deemed to have made it proportionally in all the securities in which the estate was invested ; and each was entitled to a proportionate share of the income from and the principal of each security ; that the power to continue such investments did not terminate upon the death of the widow, but remained until the trust had been accomplished ; that for the purpose of determining each daughter's share, the value of the estate at the time of the death of the widow should be ascertained, and after making certain deductions, as required by the will, the proportion which the sum of $20,000 bears to the total value of the residue is the proportion of the securities each is entitled to.

Also, *held*, that as between the daughters and those entitled in remainder, the former were entitled to the benefit of the increase in income and principal.

At the time of the death of the widow proceedings in the Surrogate's Court, instituted by the executor for an accounting, were pending. These proceedings were continued, and resulted in a decree which stated

that a sum specified remained in the hands of the executor and trustee for distribution, and he was directed to pay over out of the principal to himself as trustee four separate sums of $20,000 each, and invest the same as trustee, as provided by the will, and divide the balance between the two sons. The sum stated did not represent the actual value of the estate. *Held,* that the daughters were not precluded by the decree; that it did not and was not intended to change the power of the executor under the will, and it was not the object of the accounting to obtain a construction of the will as to the power of the executor to invest or continue investments.

Also, *held,* that the receipt by the daughters of the interest paid to them was not, in the absence of evidence of knowledge on their part that their proportionate shares of the securities were earning more than enough to pay that amount, an acquiescence in the assumption that they were only entitled to interest, and that the fact that for a number of years their brothers had received more, and they less, than they were entitled to, was not a reason for continuing this injustice.

(Argued December 5, 1893; decided January 16, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made July 6, 1893, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term, construing the last will and testament of Reuben Withers, deceased.

This action was brought to have the accounts of David Dunham Withers, as executor of the will of Reuben Withers, deceased, settled, and the rights and interests of the parties under said will determined, and for a distribution of the estate, etc.

Reuben Withers died in the city of New York prior to the 7th day of February, 1867, on which day his will was duly admitted to probate by the surrogate of the county of New York. In that will he appointed three executors, one of whom declined to act. The second, George R. I. Bowdoin, qualified and acted as such until his death on the 14th of March, 1870. The third, David Dunham Withers, was the son of the testator, and after the death of Mr. Bowdoin qualified and acted as executor, and letters testamentary were issued to him on the 21st of May, 1870. The testator left a

widow, three sons and four daughters. One son, David Dunham Withers, the executor, was not provided for by the will for the reason, as stated by the testator, that the son was already wealthy in his own right. After providing in the third clause of his will for the payment of the interest on $13,000 to his son Alfred D. Withers for life, with remainder to his descendants, the testator gave the rest of his estate to his executors in trust, with power to sell the real estate and to get in all his personal estate and to keep his estate and its proceeds safely and securely invested, and then added language as follows: "My own preference being that investments made by me in my lifetime should be continued so long as the same, in the judgment of my executors, can be done without loss or detriment of my estate."

Out of the estate thus given to the executors they were directed by the sixth clause to set apart an amount sufficient to produce a yearly income of $900, which the executors were to apply to the use of the testator's son Reuben B. Withers for life, and remainder to his descendants as provided for in the seventh clause. The executors were then, by the eighth clause, directed to apply the net rents, issues, income and profits of all the rest of testator's estate to the use of his wife for her life. Then follow the ninth and tenth clauses of the will as follows:

"*Ninth.* Upon the death of my said wife to allot and set apart out of the said rest, residue and remainder of my estate and of the proceeds and investments thereof (exclusive of what is disposed of in the third, sixth and seventh articles of this my will) into as many shares, each of the value and amount of twenty thousand dollars, as there shall then be survivors of my three daughters, Elizabeth Mary Center, Eupheme D. Clason and Virginia Paine, and of the descendants of either of my said three daughters who may have previously died leaving descendants or a descendant, and also of the descendants of my daughter Cora, whether she be then living or not; all the descendants of either deceased daughter counting but as one, however, for the purpose of such allot-

ment, and to apply the net rents, issues, income and profits of one of such shares or portions, to be set apart for that purpose, to the use of each of my said three daughters, Elizabeth Mary Center, Eupheme D. Clason and Virginia Paine, who may then be living, during the natural life of such daughter respectively, free from the debts, contracts, control or engagements of any other person, and in like manner during the life of my daughter Cora to apply the net rents, issues, income and profits of one of such shares or portions to be set apart for that purpose to the use of the descendants of my daughter Cora who may be living, from time to time during her lifetime, in equal shares *per stirpes* and not *per capita*, my said executors, in their discretion, being at liberty to make such application by paying the same over to my said daughter Cora for the use and benefit of her said descendants, but being under no obligation so to do, and if either of my said three daughters or my said daughter Cora shall not then be living, to divide and distribute one of such shares to the descendants or descendant of each such deceased daughter, share and share alike, *per stirpes* and not *per capita*. To have and to hold to them respectively, their respective heirs, executors and administrators forever.

" *Tenth.* Upon the death of each of my said three daughters who shall have been living at the time of the allotment directed by the ninth article of this my will, and also upon the death of my daughter Cora, to divide and distribute the share or portion of my estate and of the proceeds and investment thereof, of which the income is in pursuance of the said ninth article of this will, to be applied to the use of such daughter during her life or to the use of the descendants of my daughter Cora during her life, to and among the descendants of such daughter, if she shall leave any her surviving, share and share alike, *per stirpes* and not *per capita*, and if such daughter shall leave no descendant surviving her to and among the then survivors of my said three daughters, other than my daughter Cora, and the descendants of either of my daughters who may have died leaving descendants or a

descendant, share and share alike, *per stirpes* and not *per capita*, to have and to hold to them respectively, their respective heirs, executors and administrators forever."

The eleventh and twelfth clauses provide in substance for the payment of the remainder of the estate to or for his two sons, Reuben B. and Alfred D. Withers, upon some details and with some conditions not here material.

The widow of the testator survived him until March, 1878, when she died. Alfred D. Withers is dead, leaving three children. One of the daughters is dead, leaving two sons.

David Dunham Withers, the executor, on or about the 24th of January, 1878, commenced a proceeding in the Surrogate's Court of New York for his accounting as executor, which was pending at the time of the death of the widow. The proceeding continued, and the account was made up as of July, 1878, and the final decree was entered on the 17th of April, 1879. By that decree it was stated that the sum of $139,530.30 remained in the hands of the executor and trustee for distribution according to the directions of the will, and the decree then provided that the executor, after making certain payments therein mentioned, should, out of the balance of the principal then in his hands, pay over to himself as trustee, under the third clause of the will, the sum of $13,000, being the amount collected on the mortgages in the third clause mentioned, and he was directed to hold and invest the same as in said third clause or section of said will directed. The decree in giving further directions to the executor proceeds as follows : " And that he then pay over out of said principal to himself as trustee under the ninth clause or section of the will of said testator four separate sums of twenty thousand dollars ($20,000) each, and invest the same as trustee as in said ninth clause or section, and the tenth clause or section of said will is directed. And that the said executor and trustee then divide the balance of· said principal remaining in his hands into two equal half parts or portions, and pay over one of said equal half parts or portions to Alfred D. Withers, as in the twelfth clause or section of said will provided, and that he pay over to himself, as

trustee under the eleventh clause or section of said will, the other of said equal half parts or portions, and hold and invest the same as trustee as in said eleventh clause or section provided."

It is found by the learned trial court that the sum stated in the above decree of $139,530.30, did not represent the actual value of the estate included therein, either at the death of the widow or at the date of the decree. The court further found that the executor, David Dunham Withers, never in fact paid over to himself as trustee under the third clause of the will, or under the ninth and tenth clauses of said will, any of the sums mentioned in those clauses, nor was either or any of said legacies invested by the executor, but interest on each sum was paid by him to the party entitled to it as provided in the 3d and 9th clauses of the will, and these payments were continued up to the death of the executor. As to the legacies mentioned in the 9th clause, interest at the rate of 7 per cent per annum was paid on each of them down to the year 1887, and thereafter at the rate of 6 per cent.

It was further found that the value of the estate as a whole and the value of some items of property of which it consisted had increased between the death of the testator, Reuben Withers, and the death of the widow, Matilda Ann Withers, and also between her death and the present time. The executor, David Dunham Withers, in fact made no allotment or separation of the estate while it was in his hands, but the same remained *in solido*, whether for convenience of administration or for what purpose is not found.

The conclusions of law by the trial court were: *First*, that by the provisions of the 9th article of the will of Reuben Withers, the four several allotments, each of the value and amount of $20,000, which were to be set apart on the death of the testator's wife out of his general estate, in trust for the use or benefit of his daughters, were in substance and effect pecuniary legacies in trust, amounting in the aggregate to $80,000. *Second.* That by the decree of the surrogate above mentioned the executor was required to pay over to himself

as the trustee under the 9th article of the will, these four sums of $20,000, and invest the same upon the several trusts applicable thereto. *Third.* That until the actual making of the separation so authorized and required to be made by the will and by the decree, the residue or general estate of the testator remained primarily liable and chargeable for and in respect of said four sums of $20,000 each, so that all losses or hazards should first fall upon the general estate, and the failure of David Dunham Withers to separate the several trust legacies from the general estate, and his omission to separately invest the same, did not alter the relative rights and interests of the parties as between each other. *Fourth.* That the regular payment of interest on these trust funds was at the least full and adequate satisfaction of all claims to income by the parties receiving it, and the acceptance of that interest estops them from any other claim in regard to such income.

Other facts appear in the opinion.

*L. Laflin Kellogg* for appellant New York Security and Trust Co. The plain intention of the testator and the express terms of the will require that separate trusts, taken either from the investments or proceeds of his estate to the amount and value of $20,000, should be set apart at the time of the death of testator's widow for the use and benefit of his three daughters and the descendants of his daughter Cora. (*Monarque* v. *Monarque,* 80 N. Y. 320–324; *Wells* v. *Wells,* 88 id. 323–333; *Stevenson* v. *Lesley,* 70 id. 512–516; *Savage* v. *Burnham,* 17 id. 561; *Everitt* v. *Everitt,* 29 id. 39.) The executor and trustee having failed to perform his duty, the court has the power and should carry out the intention of the testator, by separating the estate into the trusts established by the will, and making the allotments out of the investments existing at the date of the death of Matilda Ann Withers, and as of that date, thus awarding to each *cestui que trust* the share of the income and profits which she would have received if the provisions of the will had been carried out and the allotment and separation made as therein provided. (R. S.

2193, 2288, 2290, §§ 2, 6, 23 ; *Delaney* v. *McCormack,* 88 N. Y. 174; *Mott* v. *Ackerman,* 92 id. 539 ; *Manice* v. *Manice,* 43 id. 303; *Moncrief* v. *Ross,* 50 id. 436 ; *Bearns* v. *Gould,* 77 id. 455 ; *O'Connor* v. *Huggins,* 113 id. 511; *In re Hawley,* 100 id. 206 ; *In re Tilden,* 98 id. 434.) If the court should determine, as is claimed by the plaintiff, that the legacies in favor of the daughters are pecuniary legacies of $20,000 each, still the daughters would be entitled to the same amount of income and profits as claimed under the foregoing subdivision. (*In re Myers,* 131 N. Y. 409 ; Perry on Trusts, § 464.) There is no merit in any of the objections raised by the respondents as to the right of these appellants to an allotment *nunc pro tunc* as of a date immediately after the death of Matilda Ann Withers, the widow. (*Ronald* v. *M. R. F. L. Assn.,* 132 N. Y. 378–384 ; *Roberts* v. *M. Ins. Co.,* 88 id. 541 ; *Weed* v. *L. & L. Ins. Co.,* 116 id. 106 ; *Roby* v. *A. C. Ins. Co.,* 120 id. 510 ; *In re Gerry,* 103 id. 451 ; *Hogan* v. *De Peyster,* 20 Barb. 100.) As between the life tenant and the remainderman, under the ninth and tenth clauses of the will, the net rent, income, issues and profits belong to the former and not to the latter. (*Van Doran* v. *Olden,* 19 N. J. Eq. 176 ; *Earp's Appeal,* 28 Penn. St. 368 ; *Wiltbank's Appeal,* 64 id. 256 ; *Lord* v. *Brooks,* 52 N. H. 72 ; *Clarkson* v. *Clarkson,* 18 Barb. 646 ; *Bates* v. *McKinley,* 31 Beav. 280 ; *Barclay* v. *Livingston,* 14 Ves. 66 ; *Price* v. *Anderson,* 15 Sim. 473 ; *Johnson* v. *Johnson,* 5 L. & Eq. 164; *Murray* v. *Glasse,* 17 Jur. 816 ; *Hooper* v. *Rossiter,* 1 McClel. 527 ; *Morris* v. *Harrison,* 2 Mad. 479 ; *Plumb* v. *Neild,* 6 Jur. [N. S.] 529 ; *In re Gerry,* 103 N. Y. 451.)

*Delos McCurdy* for appellants De Wilhorst and De Ran court. The power conferred upon the executors is a special power in trust and is imperative. (4 R. S. [8th ed.] 2247, 2248, §§ 95, 96, 121.)

*Frederic R. Coudert* for appellant Bischoffsheim. The plain effect of the relevant provisions of the will was to make

it incumbent on the trustee to allot and set apart, upon the death of the testator's widow, assets of some sort, then of the value and amount of $20,000, to constitute and be the share to be held in trust for Mrs. Paine during her life, and after her death divided among her descendants. (*Holmes* v. *Gilman,* 138 N. Y. 378.)

*Richard L. Hand* for Withers and other respondents. With reference to the distribution of income made during his life by the executor, David Dunham Withers, it could in no event be disturbed. (*In re Gerry,* 103 N. Y. 445.) The claim that the $20,000 trust legacies are to be enlarged at all is groundless and untenable. (*Duclos* v. *Benner,* 136 N. Y. 560.) The familiar principles of equitable conversion, which have been strenuously urged by the appellants in the Supreme Court, have no legitimate bearing upon the case at bar. (*Moncrief* v. *Ross,* 50 N. Y. 436; *White* v. *Howard,* 46 id. 162; *Read* v. *Williams,* 125 id. 571; *Scholle* v. *Scholle,* 113 id. 270.)

*Edward W. Sheldon* for United States Trust Company, respondent. The legacies given by the ninth paragraph of the will of Reuben Withers were general pecuniary legacies of $20,000 each. (2 Redf. on Wills, 149.) The appellants are estopped to maintain their present condition. (*Denton* v. *Sanford,* 103 N. Y. 607; *In re Tilden,* 98 id. 434; *In re Hawley,* 100 id. 206.)

*William G. Choate* for Monson, as executor, respondent.

Peckham, J. David Dunham Withers, the executor of his father's will, died on the 18th day of February, 1892, leaving a will which was admitted to probate by the surrogate of New York county, and letters testamentary were issued thereon by him to the plaintiff herein on the 16th day of March, 1892. This action is brought for the purpose of having the accounts of David Dunham Withers, as executor of the will of his

father, Reuben Withers, settled and allowed, and the rights and interests of all the parties interested in the estate of the father finally settled and determined and a distribution made in accordance with such determination. From the time that David Dunham Withers qualified as executor in 1870 the estate remained in his hands up to his death, and at that time the estate was invested in various securities, some of them standing in the name of the executor individually, some in the name of the estate of Reuben Withers, deceased, and some in the name of Reuben Withers. Since the death of the widow of Reuben Withers in March, 1878, the estate has largely increased in value by the appreciation of certain of the securities in which it was invested. The investments made by Reuben Withers in his lifetime were kept substantially unchanged during the life of the widow, and from her death down to the death of the executor, David Dunham Withers, the investments remained also about the same, with some named exceptions which appear in the accounts of the executor. The failure of the executor, upon the death of the widow, either to pay the sum of $20,000 in money for each of the four trust funds, or to actually and formally allot and set apart the various trust shares from the balance of the estate, together with the large appreciation in the value of some of the securities belonging to the estate, have given occasion for this controversy.

The question has arisen substantially between the interests of the sisters on the one side and those of the brothers on the other.

On the part of the sisters it is claimed that they should share *pro rata* in whatever rise in value there was in the securities in which the estate was invested, because, as alleged, those securities represented the trust estates belonging to them under the will of their father.

On the part of the brothers, on the contrary, it is claimed that they should be paid the whole residue of the estate after deducting the amount of the various trust estates provided for by the terms of the will. In other words, the representatives

of the brothers' interests claim that they alone are entitled to the whole of the estate, be it great or small, after the sisters have had their four shares of exactly $20,000 each.

Up to the death of the executor in 1892, the brothers, since the death of the mother in 1878, were paid all the income arising from the investment of the estate, after deducting a sum amounting to the legal interest on each of the four sums of $20,000. The interest actually paid to the sisters during all this time amounted to a little over $71,000. Taking the total value of the estate at the death of the widow to have been in round numbers $140,000, there remained after deducting therefrom a trust fund of $13,000 under the third clause, and one of like amount under the sixth clause of the will, for the two brothers respectively, and the $80,000 trust fund for the sisters, a balance to be divided between the brothers of $34,000 ; but as the above sums of $13,000 each were also given in trust for the sons it is just to say that taking them together, the $34,000 and the $26,000, would leave $60,000 to be divided between them as against $80,000 to be divided between the sisters.

No division was, however, made, and by reason of the appreciation in the value of the securities in which the estate remained invested, the brothers were from time to time paid as income upon their interest in such estate a total sum of a little over $95,000, and there is now a large fund (after providing for the trust estate), awaiting distribution under the direction of the court, the whole of which is also claimed on the part of the brothers or those representing their interests. If the securities had been sold and a formal division of the moneys made upon the death of the widow the brothers, upon the assumption that the whole estate was of the above-mentioned value, would have taken in the proportion above set forth.

If an actual setting apart and allotment of certain special securities had been made, such allotment would of course have been made according to the judgment of the executor, and no one can now say what that judgment would have

dictated. But the division, segregation and allotment once being made, the sisters would then have received all the benefits resulting to them from an appreciation of the stock which had been allotted and set apart for them. As there was no formal division of such securities the result is claimed to be that all these benefits accrue solely to the interests owned by the brothers.

Notwithstanding the omission of the executor (who was also trustee) to formally make this separation and division, the sisters claim the right to share proportionately to their interests in the estate as it existed at the death of the widow, in the increase in the value of the securities in which the estate has all along been invested. This claim in our judgment should be allowed. We think that by the language used in the ninth clause of the will the testator authorized his executor either to pay the legacies for his daughters in money to the amount of $20,000 each, which should be thereafter invested, or to allot and set apart to them out of the estate of the testator in his hands securities of such estate of the value of $20,000 for each fund. If the latter were done, the rents, issues, income and profits would belong to the persons owning the trust estate. And we agree that if he chose to set apart and allot securities from the estate, he could have taken any security he deemed best (up to the value stated) without being restricted to a proportionate share of all the securities. What securities he should take for the purpose of forming these trust funds, if he decided to set apart any particular ones, was matter for the judgment of the trustee alone.

The use of the words "value and amount," as contained in the ninth clause, indicates only that if the executor were to pay the legacies in money, it should amount to the sum of $20,000 for each of the funds, while if he chose to set apart securities of the estate, they should be of that value for each of such trust funds. As the executor omitted to pay the legacies in money, and as he never formally set apart or allotted any of the securities of the estate for the purpose of forming the four trust funds for the sisters, the question is.

whether that formal omission is to result as a benefit to the brothers' interests exclusively.

The sisters' shares, by reason of the course pursued by the executor, were in truth all contained in, and were at all times represented by these securities. The testator's estate consisted of such securities, and out of the testator's estate the several trust estates were to be formed. In substance the sisters owned as life legatees a certain proportionate share of each security. Although the executor had the right upon the death of the widow to pay these trust legacies in money or to set apart such of the securities in which the estate was invested, as in his judgment he should think best (up to the stated value), yet we think that when he omitted to do either, he must be deemed to have made such allotment proportionately in all of the securities in which the estate was invested under the provision in the will for continuing the investments of the testator if in the judgment of the executor consistent with the safety of the estate. We think the power to thus continue such investments remained until the trusts created by the testator had been accomplished and, therefore, it did not terminate upon the death of the widow. As the executor kept the estate in large part invested in those securities even after her death, we think such action on his part can be regarded in no other light than as an investment in these securities of the different interests of those who in reality owned the estate. At any rate the whole estate was owned by these different parties and this whole estate was thus invested in these securities. It was not necessary, in order that each party should enjoy and have the benefit of his or her proportion of such estate, to have a formal allotment or segregation made of the shares of the estate belonging to such person. As long as the whole estate was thus kept, each party in fact owned his or her proportionate share of the income from and the principal of each security. . It was only necessary to determine the value of the estate at the time of the death of the widow, and the sisters' interests would be in the same proportion in each security, and in the income arising therefrom, as the total

of the trust funds ($80,000) bore to the total value of the estate at the widow's death, and the balance would belong to the brothers. Convenience of administration might dictate the keeping of the estate *in solido*. It is not fatal to this view of the action of the executor to admit that he did not regard the sisters as entitled to any portion of the income beyond the simple interest which he paid, nor any part of the increase in value of the securities and that he, therefore, paid over to the brothers all the income arising from the securities above a sum amounting to the legal interest on the nominal amount of the trust funds.

His view of the legal rights of the sisters is not important. His action in making payments as stated is to be considered only in its bearing upon the meaning or legal effect of his keeping the estate unseparated. It is said he never intended to make any such allotment of a proportionate interest in the securities as we now assume he did in fact make, because if he had he would then have paid their proportionate share of the whole income arising from such securities. This by no means follows. He might have supposed it was proper under the circumstances that the whole estate should be kept invested as it was, because in his judgment the investments were good, and that in his opinion all that each sister would be entitled to, even if a formal allotment were made of a proportionate share in each security, would be the legal interest on $20,000, the extent of the trust fund. We think that by the retention of these securities he did come to a conclusion that in his judgment they were proper investments for the whole estate. He would not have retained them had he decided otherwise. In determining to keep the whole estate so invested, he in fact determined that the securities were proper investments for the trust estate of the sisters. In this way and to this extent he may be said to have invested their estates, and so permitted them to claim that he had allotted to them a proportionate share of each security in which the whole estate was invested. He failed to pay the legacies in money and he also failed to satisfy them by an actual allotment of specific securities to the

value stated by the testator, and as he still kept the estate in one gross mass, he necessarily gave to the sisters an interest in each security to an extent proportioned to their interest in the estate which such securities represented.

There is no question in regard to the possible liability of the executor for an improper investment. It cannot arise here, although it may be said that so far as appears, the executor discharged his duty in entire good faith, with strict integrity and in such a way that the contest in this case arises out of the increase in the value of the estate while in his hands. That kind of violation of duty by trustees is not very frequent in the records which we review.

It is also urged that in pursuing this system of keeping the whole estate undivided the trustee was doubtless actuated by the highest solicitude for the safety and productiveness of the trust funds, and that the effect of his action was to constitute the owners of the residuum of the estate sureties during all these years for the maintenance of the trust fund at the full sum of $80,000 up to the entire absorption of such residuum, while at the same time the sisters were in the receipt of an income measured by the legal rate of interest upon the full sum of $20,000 for each sister. It is said that such a rate of interest is much more than could have otherwise been obtained from any investment which was at the same time so well secured. Whether the balance of the estate was in effect such surety is a question which does not here arise and need not be discussed. Counsel for the brothers allege that if there had been losses suffered by the depreciation in value of these securities the sisters would undoubtedly have claimed that such losses should fall wholly on the remainder of the estate over and beyond that which was necessary to constitute the trust funds, and that these sisters would have claimed such to be their rights, because there had never been any formal allotment and setting apart of any securities, and that they would be, therefore, entitled to the payment of $20,000 each before the brothers were to have anything. In the case supposed there would, of course, be a very different state of facts from those

now existing.    There would have been losses instead of gains, and whether the one or the other interest should suffer the loss or any portion of it, would have to be decided in the light of the facts as they should then appear.    What might have been the result of a contention upon facts which never occurred, and under circumstances which probably would have differed radically from those now under our observation, it is plainly useless to speculate concerning.    What we now say is that in the face of these acknowledged gains to the estate, taking the language of the will under which the executor could pay the legacies in money or by allotting securities, the very fact that he did not pay in money and did keep the estate invested and without any formal allotment of particular securities in satisfaction of such legacies, gave to each sister a proportional interest in each security, and enabled them to claim and to take the proportion belonging to them of the income arising from and of the increase in the value of the security. By keeping the whole estate thus invested the sisters' shares in the estate of their father were necessarily represented in these securities, and, of course, they should be entitled to the increase accruing therefrom.    The judgment of the executor was thus exercised in favor of all the securities instead of in favor of any particular ones and instead of paying the legacies in money.

But it is argued that the decree of the surrogate, upon the accounting made by the executor, is conclusive against this view of the case, and it is claimed that such decree is binding upon all these parties.    It may be observed that the children of the daughters, Mrs. Ludlow, Mrs. Clason, and Mrs. Paine, who are entitled in remainder to these legacies, were not made parties to the accounting, and that as to them, and for the purpose of a division of the principal of the fund, there can be not the slightest foundation for the application of the principle of estoppel.    We are of opinion, however, that the decree does not stand in the way of asserting the views above expressed.    It was given upon an accounting by an executor, and after making several other provisions the decree in effect

only provided that the executor should pay over the trust fund to himself as trustee, and invest the same as trustee, " as in said ninth clause or section of said will is directed." We do not think that this language changes or was intended to change the power of the executor under the will to pay the legacies in money or to satisfy them by setting apart securities of their value, as allowed in the will. The language of the decree would not prevent the executor from exercising all the powers given by the will, and it was not the object of the accounting to obtain a construction of the will as to the power of the executor to invest or continue investments. The direction in question was nothing more than a formal direction to the executor to go on and pay these four sums of $20,000 each in the manner directed by the will.

It is a fact, however, that the moneys were not paid, even though directed by the decree, and in the absence of such payment we think the effect of the action of the executor in keeping the whole estate together, and invested as already stated, was not altered by the entering of the decree.

Nor do we think the receipt of interest by the sisters is an acquiescence in the correctness of the assumption that such an amount is all that they were ever entitled to. There is no finding and no evidence that they or any of them knew that the securities in which the estate was invested earned more than enough to pay them that amount as their proportionate share. Because for a number of years the brothers have received more and the sisters less than they were legally entitled to from these securities, is no reason why such injustice should be continued and perpetuated for the future.

No one else has been harmed by such payments as have been made to the sisters, and no one but themselves has been harmed by the excessive payments made to the brothers. The facts make out no defense of acquiescence.

In our view the fundamental fact to be found is as to the value of the estate, and of the various securities in which it was invested at the time of the death of the widow, and we agree in this respect with the views expressed by counsel for the plaintiff, that

the surrogate's decree does not conclusively fix that value at that time, either at $139,530.30, or any other sum. The appraised value in the inventory as we think related to the appraisal as made in the inventory of the first executor, Mr. Bowdoin, in 1867, and did not relate to the value of the various securities at the time of the widow's death. That fact must be first stated, and then there should be deducted from that sum the amount of the trust created for the benefit of the testator's son Alfred D. Withers, being $13,000, and an equal sum should then be deducted for the benefit of the testator's other son, Reuben, and the proportion which the sum of $20,000 bears to the total value of the estate, as thus found and after such deductions, is the proportion which each sister would be entitled to of the securities of the estate upon an accounting. The same proportion would be coming to them from the income, and upon the inquiry which is now to be made it must be determined what amount may be now due in order to equalize the income upon the basis herein stated.

The question which has been raised as to which of the parties, the life legatees or those entitled in remainder, should have the benefit of the increase in the income and principal, should be answered in favor of the life legatees. It came to them, as it seems to us, by force of the circumstances adverted to, and by reason of the language of the will and the clear intent of the testator.

As there is no question regarding the accounts of the executor in any other matter, we think the judgment appealed from should be affirmed in all things except as to the interests of the brothers and sisters in the distribution of what remains of the estate. The counsel for the appellants stated on the argument that there was a sum in the hands of plaintiff which, if distributed upon the basis we have above indicated, would be large enough to give to them the amounts which would be due them as principal and income, without calling upon any one else for a payment. The inquiry will, therefore, be confined to the distribution of the fund actually in the hands of the plaintiff. It should be distributed in accordance with

the views which we have stated, and the judgment is, therefore, modified accordingly, and the proceedings remitted to the Supreme Court for its further action. The plaintiff and the appellants should recover costs in this and the Supreme Court, to be paid out of the general estate. No costs to the respondents other than the plaintiff.

All concur, except BARTLETT, J., not sitting.

Judgment accordingly.