In the Matter of the Estate of CHARLES TOWNSHEND DADE, Deceased.

Surrogate's Court, New York County, April 16, 1935.

*Satterlee & Canfield,* for the executors of the deceased trustee, and for Mehetabel Enrique de Sotolongo and another, beneficiaries of certain trusts.

*Emmet, Marvin & Martin,* for the substituted trustee.

*Bartholomew B. Coyne,* for Philip Leigh, beneficiary of certain trust.

*John W. Hannon,* special guardian.

DELEHANTY, S. Deceased died December 26, 1915. He named the same person as his executor and trustee. The latter accounted in his capacity as executor and his account was settled by decree entered April 2, 1917. No other account was rendered by the executor-trustee. He died November 15, 1933, and his executors are now accounting in his behalf for his acts as trustee. Upon his death a successor trustee took over the securities and it is now accounting separately for its operations as such successor trustee.

By clause third of the will of deceased he directed his executor and trustee " to set apart out of my [deceased's] estate securities sufficient, in his [the executor's] judgment, to yield an income of $2,100 a year and to hold said securities or the proceeds thereof reinvested, and to pay over the income therefrom " to a beneficiary for life. The will provided for ultimate disposal of the securities so set apart or their proceeds.

In the next paragraph of the will deceased bequeathed all the rest of his property in trust for named beneficiaries and directed how the income and principal of such residuary trusts would be distributed.

The decree of April 2, 1917, settling the account of the executor approved schedules showing that he had theretofore set aside to himself as trustee in bulk all of the securities remaining in the estate. He was directed by that decree to pay to himself as trustee $1,917.71 of additional cash on hand which was to be dealt with as principal of the trusts.

The account now filed in behalf of the deceased trustee contains no report of the income earned during the trust administration. His executors report only the principal transactions in the trusts and report the turn-over to the successor trustee of the capital of the trust as it was constituted when the original trustee died. From the account so filed it is apparent that the deceased trustee dealt with the securities of the trusts *in solido.* The parties agree in stating that during the entire time elapsed since the setting up of the trusts there was paid to the beneficiary of the trust set up in the third paragraph of the will the exact sum of $2,100 per

year. They agree that all remaining income was disposed of as income of the residuary trusts.

· This aggregate annual income is stated to have reached a high of $10,600 and a low of $7,000 during the administration of the deceased trustee. The account filed by the successor trustee shows that it sold most of the securities received by it from the original trustee and reinvested the proceeds in securities believed by it to be more conservative with the result that the income is now about $4,100 annually. Controversy has arisen respecting the disposal of income shown to be on hand in the account of the executors of the deceased trustee. Decision must be made likewise whether in the future the sum of $2,100 annually must be paid to the income beneficiary under the third paragraph of the will. These controversies require consideration of the tenor of the will and of the legal consequences flowing from the deceased trustee's handling of the trust securities and of the income thereon.

Paragraph third of the will establishes a trust and not an annuity. Hence the beneficiary of that trust heretofore has been and now is entitled to the income upon the trust funds only and not to a specific annual sum of $2,100. It follows that the beneficiaries of the respective trusts created by the residuary clause are entitled to the income upon such trust principals undiminished by any contribution to income on the trust in the preceding paragraph. The problem here is to determine how those respective trust principals should now be ascertained.

The rule is to be found in *Monson* v. *New York Security & Trust Co.* (140 N. Y. 498). There, as here, a trustee charged with the duty to segregate and set up separate trust principals failed to do so. The Court of Appeals there said that since the securities in the estate were dealt with *in solido* the interests of the respective trusts in each and all the securities of the estate were to be deemed respectively that fractional interest which was equivalent to the fractional proportion which each trust capital bore to the total capitals of all of the trusts at the time they should have been segregated. That rule works justice among the respective beneficiaries. It has been followed in other cases (*Matter of Clark*, 251 N. Y. 458, 466; *Matter of Kohler*, 231 id. 353). (Cf. *Matter of Sidenberg*, 147 Misc. 742.)

Applying that rule for decision to the case here, there must be ascertained, on the basis of conditions as they existed at the date of death of deceased, a capital which then would have paid the sum of $2,100 per year. When the capital value adequate to produce that income has so been ascertained its fraction of the then total capital value of all the trust funds must be determined.

When that fraction is determined it represents the interest throughout the whole period of trust administration and now, of the beneficiary under the trust set up by the third paragraph both in income and in principal.

It may be ascertained by this method of allocating principal and income that over the period of trust administration by the deceased trustee he paid to the beneficiary under the trust created by the third paragraph less or more income at times than was due to that beneficiary; and in consequence paid less or more to the residuary beneficiaries than was due to them. In view of the fact that over all this period all of the parties apparently acquiesced in the trustee's scheme of distribution of income they may now desire to make no criticism of it. Readjustment will be possible only within the period of limitations.

The principal of the trusts should now be segregated. The fractional interest established by the computation made as of date of death of the deceased should now be allocated in each security to the trust created under the third paragraph of the will. The remaining interests in such securities must be allocated to the residuary trusts in due proportion as among them. The parties may be able to agree upon allocation to the respective trusts of entire interests in certain securities. If agreement cannot be reached the court will on application set a date for hearing any contested issues. Proceed accordingly.