Carrol S. Walsh, S.
This is a proceeding for the construction and effect of paragraph Fifth of the last will and testament of Mary L. Argersinger, deceased.
Mary L. Argersinger died testate August 9, 1924 and her last will and testament, dated May 18, 1920, and two codicils thereto, dated September 7, 1921 and July 1, 1924, respectively, were duly admitted to probate in the Surrogate’s Court of Fulton County on August 26, 1924. Letters testamentary were issued to her husband, the executor named, on August 26, 1924.
Paragraph Fifth of the decedent’s last will and testament reads as follows: “ I give and bequeath unto my daughter-in-law, Mary C. S. Argersinger the sum of Thirty Thousand Dollars, to have and to hold for and during the term of her natural life, with the right to hold the same and invest the same in such securities as she shall deem best; and after her death, I give and bequeath the principal thereof to my brother, Edward C. Decker and my sister, Luella D. Mosher in equal shares, the children of a deceased brother or sister to take the parent’s share, and in event of the death of either without a child, then all to the survivor.”
Mary C. S. Argersinger died testate June 16, 1972. Her last will and testament, dated May 12, 1969 was duly admitted to probate in this court, Sarah D. Roberts and Mary C. Pratt *768 being the sole beneficiaries under said will and also the designated co executrices, to whom letters testamentary were granted.
Following the death of Mary L. Argersinger and granting of letters testamentary in her estate to Sidney Argersinger, he delivered certain securities having a value of $30,000 to Mary O. S. Argersinger, in accordance with the provisions of paragraph Fifth of the will of Mary L. Argersinger. It is the contention of the petitioner herein that .the original personal property delivered to Mary C. S. Argersinger constituted original corpus or principal in which the latter was given a life interest, and that this corpus or principal or whatever of it has been replaced or substituted by investment in other securities continues to be and now constitutes the principal thereof and, by reason of the termination of the life estate, the estate of Mary C. S. Argersinger has no valid or legal title' or interest in this principal; that a decree should be made directing the co executrices of the estate of Mary C. S. Argersinger to account for the principal and further ordering them to turn over and deliver the entire principal to the remaindermen.
The coexecutrices of the estate of Mary O. S. Argersinger oppose the application of the petitioner, contending that the doctrine of imperfect usufruct applies in this case, in that the corpus of this life estate was consumable, and, from a reading and interpretation of the entire will and of the codicils thereto, it is evident that it was testatrix’s intent that the life beneficiary had the right to consume the corpus. The coexecutrices further submit that they found no property among the assets of Mary O. S. Argersinger in the title name of Mary L. Argersinger, although they did find a bankbook upon the State Bank of Albany in the name of “ Mary C. S. Argersinger, Trust Fund ” with the notation thereon written in the handwriting of Mary C. S. Argersinger the words, ‘1 Mary L. Argersinger trust fund or life int.”, and also found certain securities in the safety-deposit box of Mary C. S. Argersinger which were in the title name of the latter and were all contained in an ordinary unsecured brown envelope upon which were written the words, “ Securities pertaining to the Estate of Mary L. Argersinger, life int.”. The said coexecutrices further contend that the full benefit, profits, increases and any and all income upon the life bequest of $30,000 accrued to and were the property of Mary C. S. Argersinger, and that there is uncertainty whether the petitioner herein' and any other alleged remaindermen are entitled to anything.
*769 Mary L. Argersinger was survived by the remaindermen mentioned in paragraph Fifth of her will, Edward 0. Decker, her brother, and Luella D. Mosher, her sister. The said Luella Mosher died in 1957, never having had any children born to her. The said Edward C. Decker died in 1931, survived by his only children, Marion Decker McKendricks and Katherine Decker Everest The said Marion Decker McKendricks died survived by one daughter, Mary McKendricks Hathaway, now residing in North Carolina. Katherine Decker Everest died on December 1, 1945, intestate, survived by her husband, DeWitt Everest, now deceased and two sons, John M. Everest, an adopted child, and Alfred Everest, the petitioner herein.
A reading of paragraph Fifth of Mary L. Argersinger’s will leaves no doubt that a life estate was created, and the only question is whether it was the testatrix’s intent that Mary C. S. Argersinger had the right to consume the fund by applying any or all of it to her own use, reserving to the remaindermen only that which was unexpended at the time of death of the life tenant. In the specific paragraph Fifth, the words read that the sum of $30,000 is given and bequeathed to Mary C. S. Argersinger 11 to have and to hold for and during the term of her natural life, with the right to hold the same and invest the same in such securities as she shall deem best; and after her death, I give and bequeath the principal thereof to my brother * * * and my sister in equal shares ”. The words clearly and specifically indicate limitation and express the intent that the life beneficiary is to hold the entire sum during her life with the right to invest it in securities that the life beneficiary shall deem most productive by way of income. Nowhere do we find any intent, express or implied, that the life beneficiary could use the principal or corpus for her support or any other personal purpose, and it is noteworthy that the testatrix bequeathed the principal of the bequest to her brother and sister upon the death of the life tenant. She did not use the words “ remaining principal ” or “ whatever remains ” or any other similar words or phrases, but specifically stated that upon the death of the life beneficiary the principal of that bequest was bequeathed to her brother and sister. When a life estate is bequeathed in a sum of money, with remainder over, the legatee is entitled only to the income, and the principal, subject to the life estate, belongs to the remaindermen. The testatrix has the power to confide the money to the legatee for life, trusting to such legatee to preserve the fund for the benefit of the remainderman, in which case the legatee for life becomes trustee of the principal during the *770 continuance of the life estate. (Smith v. Van Ostrand, 64 N. Y. 278.) Where a will provides specifically for the interest which the legatee for life is to take in the fund, and it is limited to the annual interest, income and dividends thereof, all beyond this must, from necessity, have been intended to go to the remainder-man, for there are no other persons who could lawfully take it. (Matter of Gerry, 103 N. Y. 445.) This court finds no power of disposition of the fund given to the life beneficiary and no intent to give any and determines that Mary O. S. Argersinger was limited only to the annual interest, income and dividends from the corpus or principal of the fund.
It is argued by the coexecutrices of the estate of the life beneficiary that a reading of the will and codicils thereto of Mary L. Argersinger discloses that Mary C. S. Argersinger was the primary and natural object of the testatrix’s bounty. They contend that the will by paragraphs Second, Fourth, Fifth and Ninth, and the two codicils, when compared with the accounting in the estate of Mary L. Argersinger, show that Mary 0. S. Argersinger received substantially more than half of Mary L. Argersinger’s gross assets, and that the testatrix was obviously and primarily concerned with both the immediate and future welfare and comfort of Mary 0. S. Argersinger. However, this is refuted by a reading of the will and the codicils and, although it is clear that the testatrix intended to provide for her daughter-, in-law, it is likewise clear that the latter was not the primary and natural object of testatrix’s bounty.
By paragraph Second, testatrix gave a diamond ring to her daughter-in-law, but she also gave one to her sister and a third one to another person. In paragraph Fourth, she gave one bond to her daughter-in-law, but in that same paragraph she made five other bequests to five other people, including her husband, her brother and three nonrelatives, of substantial amounts. In paragraph Ninth, testatrix devised the family residence to her husband for his life, with the absolute power of disposition, and then provided that from and after his death in case he shall not have disposed of it, she devised it to her daughter-in-law, Mary C. S. Argersinger, to have and to hold during her life, and upon the latter’s death she devised it in fee to a named niece of her husband, if living, and, if not, to the heirs of her husband then living.
It is also noteworthy in reading paragraph Ninth that the testatrix gave an absolute power of disposal to the first life devisee, her husband, which shows that she was aware that she could grant such a right or power, or not grant it, as she chose, *771 and that she refrained from giving such a power to her daughter-in-law. This strengthens the position of this court as to the intent of paragraph Fifth and the construction placed thereon, in that the testatrix refrained from giving any such power of disposition, as to which power she was aware, in paragraph Fifth.
In the codicil dated July 1, 1924, the testatrix did devise in fee to Mary C. S. Argersinger a residence next to her own that the testatrix had purchased some time before and in which the daughter-in-law resided. In the codicil dated September 7,1921, she changed a bequest in her original will to her husband by giving him $9,000 par value of United States Liberty Bonds, or equivalent, to have and hold the same and receive the interest and income during his life, with absolute right of using and disposing of the principal during his lifetime, and upon his death, the testatrix gave the same or so much thereof not disposed of by her husband, to her daughter-in-law, Mary C. S. Argersinger. Again we encounter a life interest with the specific and express right and power to dispose the principal during the lifetime of the life legatee, and bequest of the same or so much not disposed of to a remainderman. Such words, such intent, such provision, are conspicuously absent in reading paragraph Fifth of the will, and after reading the entire will and both codicils, it being readily apparent that the testatrix was aware of her authority and prerogative to grant absolute power of disposal to a life beneficiary, it was her clear intent to grant it in connection with the life estates given her husband and not to grant it to those created for her daughter-in-law, and that the principal provided for in paragraph Fifth belonged entirely to the remaindermen.
Continuing with the argument of the coexecutrices of Mary C. S. Argersinger’s estate that she was the primary and natural object of the bounty of Mary L. Argersinger, the foregoing review of the paragraphs of the will and the codicils referred to by the coexecutrices disclosed that except for devising a residence to her, in which she had lived for some time, and naming her as the remainderman of whatever may have been left of a life use of $9,000, giving her a bond and a ring, nothing else was devised or bequeathed to her except a life interest in the sum of $30,000 and a contingent life use of the residence of the testatrix upon termination of the life use therein of testatrix’s husband in the event he did not dispose of the property.
On the other hand, testatrix gave her sister, Luella Mosher, a diamond ring, an outright bequest of $10,000, devised to her all *772 testatrix’s interest in a J. H. Decker residence and the furniture therein, named her as a remainderman of the life estate of $30,000 created in paragraph Fifth of the will, and a remainder-man of the life estate created in paragraph Seventh of the will, which devised the summer camp and personal property therein of the testatrix located at Canada Lake, N. Y., and devised and bequeathed to her the life use of the residue of testatrix’s estate upon the death of testatrix’s husband who was given prior life use thereof. To her brother, Edward C. Decker, testatrix bequeathed 20 shares of preferred stock of Fonda, Johnstown & Grloversville Railroad Co., devised and bequeathed to him and his heirs the entire residue of her estate, as the sole remainder-man, subject to life use thereof of her husband and her sister, named him as a remainderman of the life estates created in paragraph Fifth and paragraph Seventh of the will. It thus appears that the sister and brother of testatrix were the primary and natural objects of her bounty, it being both obvious and apparent that they, and their heirs, or the heirs of the survivor of them, were the recipients of the bulk of the estate. Furthermore, there were several monetary bequests to people other than members of testatrix’s family and to entities, generous in amount, but none to her daughter-in-law, which hardly supports the premise that Mary C. S. Argersinger was the primary and natural object of the bounty of Mary L. Argersinger. The will and codicils do indicate intent to provide some security for Mary C. S. Argersinger, but also show an interest that the bulk of the assets of Mary L. Argersinger remain in the family through her brother and sister and their heirs.
The coexecutrices contend that the bequest provided for in paragraph Fifth is a cash bequest and that a gift of cash limited to life use is as a matter of law governed by the law of imperfect or quasi-usufruct. "Usufruct is defined as the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantage which it may produce, provided it be without altering the substance of the thing. An imperfect or quasi-usufruct is defined as being that which is of things which would be useless to the usufructuary if he did not consume or expend them or change the substance of them. Apparently, it is contended that the cash bequest limited to life use would be useless to Mary 0. S. Argersinger if she did not consume it or expend it, or in the alternative change the substance from cash to securities purchased therewith, which constitutes the consumption or expending contemplated. It is further contended that this is what she did, that it was so *773 intended by Mary L. Argersinger that she do this, and the remaindermen are entitled to claim only that which was unexpended at her death, that is, whatever cash remained, if any. Such is not the law and it cannot be said as a matter of law that a life use of a cash bequest is an imperfect or quasi-usufruct.
That a remainder may be limited upon a bequest of personal property is unquestionable, and it is equally clear that it may be limited upon a bequest of money as well as other personal property. (Smith v. Van Ostrand, 64 N. Y. 278, supra.) A cash bequest limited to a life use can certainly be a usufruct, because it can be limited to the right of enjoying the use of it even though it is vested in another, by receiving and enjoying the income and interest which it produces, and particularly where the intent of the one creating the fund and the life use therein can be ascertained. In this case, the clear intent, from a reading and construction of the entire will and codicils, was to limit the life beneficiary to the life use of the fund, to limit her to the income and no more, and it was not necessary for the life beneficiary to consume the fund or expend it in order to carry out the intent of the creator of the fund and the life use thereof. In fact, if she were to have done this, it would have destroyed the very purpose for which the testatrix intended it, that is, a continuing source of income for the life beneficiary. Nor can it be argued that by changing the substance from cash to securities a usufruct was converted to an imperfect or quasi-usufruct, entitling the life beneficiary to a conclusion that the fund was expended leaving nothing for the remaindermen. Again, we look to the intent of the testatrix, and find that although she limited the life beneficiary to holding the fund during her life and bequeathed the principal of it after her death to named remaindermen, she authorized the life beneficiary to invest it in securities she deemed best. Such authorization did not remove any limitation or restriction but merely permitted the life beneficiary to invest the principal in whatever securities would produce the most income. Certainly purchasing securities with cash, substituting one for the other, cannot be construed so literally in a situation such as this as altering the substance of a thing. The substance here was a bequest of a sum of $30,000, regardless of the form it took, with the right to invest it in securities, and it was clearly the intent to preserve the principal, or corpus, of that bequest for the remaindermen. It was simply a right of use without any property being vested in the usufructuary. Also to be noted is the fact that the life beneficiary did not receive the bequest in cash, but rather in securities of *774 the aggregate value provided for, which she was required to preserve for the benefit of the remaindermen. No imperfect or quasi-usufruct exists in this instance.
The principal or corpus of the fund belongs to and must be turned over to the remaindermen. Where the right of possession of the fund is given to the life legatee, the testator trusts him not to waste, use or otherwise dispose of the corpus. (Matter of Ungrich, 48 App. Div. 594, affd. 166 N. Y. 618; Matter of Flynn, 73 N. Y. S. 2d 408.) A gift of income with right to possession of the fund confers on the life tenant implied authority to retain in kind that which the testator confided to his care and to invest the fund to produce that which he indicated he should have. A life tenant entrusted with custody of the principal is regarded as a trustee for the remainderman. (Smith v. Van Ostrand, 64 N. Y. 278, supra; Matter of Denton, 102 N. Y. 200; Leggett v. Stevens, 185 N. Y. 70; Matter of Ungrich, supra; Matter of Flynn, supra.) Furthermore, any accretion, capital increment, or increase in the principal of the fund belongs to the remainder-men. The life tenant being a trustee for the remaindermen, the general rule is that she was entitled only to the income of the fund and the capital increment thereof belongs to the remainder-men. (Thayer v. Burr, 201 N. Y. 155; Olcott v. Estate of Hoffman, 127 Misc. 399.) If Mary C. S. Argersinger obtained and retained securities in kind, if .she invested and reinvested the proceeds from the sale of any securities by purchasing other securities, and the securities increased in value over the years, this does not constitute income or profit but rather an accretion to the fund itself. The principal of the legacy being a trust fund, any security in which it may have been invested may, on well-settled principles, be claimed by the cestui que trust. (Smith v. Van Ostrand, supra.) The law is well settled that in investments and reinvestments of this kind, gains realized are capital and not income. Grains made on stock taken at par and sold above par are accretions to the estate in remainder. (Matter of Gerry, 103 N. Y. 445, supra; Matter of Cutler, 23 Misc. 508; Matter of Moeller, 117 Misc. 803.) Nor is there any substance to the argument that the representatives of the life tenant are obliged only to return cash in the amount of $30,000. The testatrix used the words “principal thereof ” in making the bequest to the remaindermen and did not use such words as “said sum ” or “ the same ”, or anything of a similar nature, clearly indicating an intent that any increase in value of the original sum, as invested, shall enure to the benefit of the remaindermen.
*775 Nor can it be held that any increase in value is attributable to the accumulation of income or is the result of the investment of income by the life tenant, there being no evidence of this presented to the court. No presumption will lie that this remainder has been increased by accumulations of income. The estate in remainder was in the sole charge of the life tenant. The investments and securities coming into the hands of the surviving executor, on their face, all belong to the estate in remainder. It will not be presumed that the life tenant mixed her own moneys with the moneys belonging to the estate in remainder; or that she invested her own moneys as executrix or in the name of the estate. (Matter of Cutler, supra.)
The case of Monson v. New York Security & Trust Co. (140 N. Y. 498) cited by the coexecutrices of the estate of Mary C. S. Argersinger, does not, as they contend, hold otherwise than that which we have held herein, namely, that the remaindermen are entitled to the accretion. In the Monson case, the life beneficiaries were paid for years only the legal rate of interest on the original sum allocated for their life use, from which they were to receive the income. However, the original sum was invested and increased in value, earning additional income which exceeded the annual amount of the legal rate of interest on the amount of the original sum. The court held that the life beneficiaries were entitled to and should receive the additional income arising from the increase in the value of the securities in which the original sum of money was invested. It did not hold that the life beneficiaries were entitled to the difference in value between the sum originally invested and the value of the securities upon termination of the life estate.
Accordingly, Luella Mosher, sister of testatrix Mary L. Argersinger, having predeceased the life beneficiary and having died without child, the principal of the life estate is vested in the grandchildren of Edward C. Decker, brother of testatrix, one of whom, Alfred Everest, is the petitioner herein. Edward C. Decker also predeceased the life beneficiary, survived by two children, Marion MeKendricks and Katherine Everest, both of whom also predeceased the life beneficiary, Marion, being survived by a daughter, Mary Hathaway, and Katherine survived by two sons, Alfred and John. Therefore, one half of the principal is vested in the remainderman Mary Hathaway, and the other half is vested, equally, in the remaindermen Alfred Everest and John Everest. The respondent coexecutrices make some reference to the adoptive status of John Everest, but this in no way affects them or the determination of the issue before *776 the court. Only the petitioner herein, as the only remainderman whose rights could be affected, can raise this issue and since he has not, no determination on such a point can be or need be made by this court.
The coexecutrices of the estate of Mary O. S. Argersinger, as the respondents herein, are directed to account to this court for the principal in which the decedent, Mary 0. S. Argersinger, had a life interest in accordance with and by virtue of the provisions of paragraph Fifth of the last will and testament of Mary L. Argersinger, and further ordered and directed to turn over, pay over and deliver to Alfred Everest and John Everest, two of the three remaindermen, one half of the principal in which Mary 0. S. Argersinger had a life estate, which includes all accretions thereto. The other remainderman, Mary Hathaway, having elected to settle her claim to her share of the principal of the life estate with the coexecutrices of the estate of Mary C. S. Argersinger, no order or direction of this court with respect to her share can be or need be made herein.
The coexecutrices of the estate of Mary 0. S. Argersinger request the allowance of commissions to them as successors as fiduciaries to Mary L. Argersinger and Sidney Argersinger. It is not clear to the court what they mean by this, but in any event this court finds no basis for it and the request is denied. A final decree was made and entered in this court in 1938 finally and judicially settling the final account of Sidney Argersinger, the deceased executor of the estate of Mary L. Argersinger, and discharging him, his estate and the executrices of his estate, of whom Mary C. S. Argersinger was one, from any further liability or obligation as to the estate of Mary L. Argersinger.
Nor is any allowance for counsel fees made to the attorneys for the coexecutrices of the estate of Mary 0. S. Argersinger, on this proceeding, as they requested.