In the Matter of the Final Accounting of ELBRIDGE T. GERRY as Trustee, etc.

The will of G. gave to his executors $10,000 in trust, with directions to invest the same in certain specified interest-bearing obligations, to pay "the annual interest, income and dividends thereof" to J., a daughter of the testator, during her life, and upon her death, leaving no issue, to divide "the principal or capital sum aforesaid" among the testator's other children. With the consent of all parties interested, a portion of the fund was invested in securities other than those named, but all of them, by their terms, drew fixed rates of interest, payable annually. A sale of the securities after the death of the life tenant resulted in a surplus over the amount of the original investment. Upon a settlement of the accounts of the trustees, *held*, that the surplus was an accretion to the fund, and that the remaindermen were entitled thereto.

The distinction between this case and those involving the division of gains or profits arising from investments in trade or corporate stock, pointed out.

*It seems* that even if the investments in unauthorized securities had not been assented to, they would have been subject to the same rules of division and distribution, as though made in accordance with the terms of the will.

(Argued October 12, 1886; decided November 23, 1886.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of May, 1885, which affirmed, so far as appealed from, a judgment of the Special Term in proceedings for the settlement of the accounts of Elbridge T. Gerry, as sole trustee of certain trusts created by the will of Peter P. Goelet, deceased.

The material facts are stated in the opinion.

*E. L. Fancher* for appellant. Dividends, whether ordinary or extraordinary, belong to the life-tenant; though if shares be given they are capital, and belong to the remaindermen. (*Clarkson* v. *Clarkson*, 18 Barb. 646; *Simpson* v. *Moore*, 30 id. 537; *Estate of Woodruff*, 1 Tucker, 58; *Riggs* v. *Cragg*, 26 Hun, 89–103; *Earp's Appeal*, 28 Penn. St. 368; *Witbaugh's Appeal*, 64 id. 256; *Vinton's Appeal*, 11 Week. Notes of Cas.

[Penn.] 246; *Lord* v. *Brooks*, 52 N. II. 72; *Van Doren* v. *Olden*, 19 N. J. Eq. 176; *Scovill* v. *Roosevelt*, 5 Redf. 121; *Peirce* v. *Burroughs*, 58 N. H. 392; *Miller* v. *Greenard*, 21 Am. Law Reg. 381; *Bates* v. *McKinley*, 31 Beav. 280; *Barclay* v. *Livingston*, 14 Ves. 66; *Price* v. *Anderson*, 15 Sim. 473; *Johnson* v. *Johnson*, 5 L. & Eq. 164; *Murray* v. *Glasse*, 17 Jur. 816; *Hooper* v. *Rossiter*, 1 McClel. 527; *Morris* v. *Harrison*, 2 Mad. 479; *Plumb* v. *Neild*, 6 Jur. [N. S.] 529.) A tenant for life is entitled to the benefits arising from use of the principal of the trust fund and all income from it. (Hill on Trustees, 385, 386; *Cowenhoven* v. *Shuler*, 2 Paige, 122, 131; *Clark* v. *Clark*, 8 id. 152, 160; *Spear* v. *Tinckman*, 2 Barb. Ch. 211; *Rapalye* v. *Rapalye*, 27 Barb. 610, 615; *Calkins* v. *Calkins*, 1 Redf. Surr. 337; Perry on Trusts, § 547; *Howe* v. *Dartmouth*, 7 Ves. 137; White & Tudor's Lead. Cas. [4th Am. ed.] 676 *et seq.*, and notes; *Kinmouth* v. *Brigham*, 5 Allen, 276.) The principal sum should be awarded to the remaindermen, and the profits gained therefrom by the trustee's use of it to the life-tenant. (*Harvard College* v. *Amory*, 9 Pick. 446; *Balch* v. *Hallet*, 10 Gray, 402; *Reed* v. *Head*, 6 Allen, 174; *Van Doren* v. *Olden*, 19 N. J. Eq. 176, 179; *Earp's Appeal*, 28 Penn. St. 368; *Witbaugh's Appeal*, 64 id. 256; *Moss' Appeal*, 83 id. 264; *Londesborough* v. *Somerville*, 19 Beav. 295; *Maclaren* v. *Stainton*, 3 De Gex, F. & J. 202; *Plumb* v. *Neild*, 6 Jur. [N. S.], Pt. 1, p. 529; 29 L. J. [N. S.] Ch. 619; *Dale* v. *Hayes*, 40 L. J. [N. S.] 244, 246; *In re Chesterfield's Trusts*, 49 L. T. [N. S.] Ch. Div. 261; *In re Hopkins' Trusts*, L. R., 18 Eq. Cas. 696; *Johnson* v. *Johnson*, 15 Jur. 714; 5 Eng. L. & Eq. 646; *Price* v. *Anderson*, 15 Sim. 473; *Leland* v. *Hayden*, 102 Mass. 550.)

*George G. Kip* for respondents. Any question as to the ownership of any accretion or increase in the amount of the trust fund, other than from the fixed and accruing interest thereof, is already *res adjudicata*. (*Gates* v. *Preston*, 41 N. Y. 113; *Brown* v. *Mayor, etc.*, 66 id. 390; *Blair* v. *Bartlett*, 75

id. 150; *Wood* v. *Byington,* 2 Barb. Ch. 388.)   The increase
realized from the conversion into money or other securities of
securities constituting the investments of a trust fund belongs,
on the termination of the trust, to the remainderman.   (*Clark-
son* v. *Clarkson,* 18 Barb. 646; *Schoomaker* v. *Van Wyck,* 31
id. 457; *In re Pollock,* 3 Redf. 111–116; *Roosevelt* v. *Scovel,*
5 id. 121; *Townsend* v. *U. S. Trust Co.,* 3 id. 220; *Bergen*
v. *Valentine,* 63 How. Pr. 226; *Gray* v. *Darlington,* 15
Wall. 66.)   The testator used the word "representatives" to
mean such of his grandchildren or children as may take as re-
maindermen.   (*Phyfe* v. *Phyfe,* 3 Brad. 53; *Cogswell* v.
*Cogswell,* 2 Edw. Ch. 240.)   The words which denote the es-
tate of the life beneficiary are "interest, income and dividends."
(*Townsend* v. *U. S. Trust Co.,* 3 Redf. 223.)   The specific
earnings in each year are all that can be claimed for the life
beneficiary.   (*Gray* v. *Darlington,* 15 Wall. 65; *In re Pol-
lock,* 3 Redf. 114.)   The estate of the life beneficiary was capa-
ble of being apportioned as it accrued *de die in diem.*   (*Clapp*
v. *Astor,* 2 Edw. Ch. 383.)   The earnings from the use of
capital belong to the life beneficiary, and the increased capital
or additional value in capital to the remaindermen.   (*Clarkson*
v. *Clarkson,* 18 Barb. 646; *Simpson* v. *Moore,* 30 id. 637;
*Cragg* v. *Riggs,* 5 Redf. 82; *Riggs* v. *Cragg,* 26 Hun, 89;
*Knight* v. *Lidford,* 3 Demarest, 88.)

RUGER, Ch. J.   The matter here in controversy arises be
tween the representatives of the life estate, and certain remain-
dermen, with reference to the proper distribution between them,
of an increase in the amount of the trust fund, discoverable
upon a sale of the securities in which it was invested, after the
life estate terminated.

The fund was created in the year 1828 under the will of
Peter P. Goelet, devising to his executors as trustees the sum
of $50,000, to invest "in funded stock of the United States, or
of the State of New York, or in good bonds and mortgages on
real estate," with directions to pay "the annual interest, income
and dividends thereof" to his daughter, Jean B. Goelet, dur-

ing her life, and upon her death, leaving no issue, to divide the " principal or capital sum aforesaid " " among my other children in equal proportions." A codicil to said will, made in the same year, increased the said fund by an additional sum of $20,000, which, upon the death of said Jean B. Goelet without issue, was also directed to be paid to her surviving brothers and sisters, or to their respective representatives.

During the existence of this trust, which extended for fifty-four years to the death of Jean B. Goelet in 1882, the annual interest collectible upon the sum invested, was duly paid to her by its trustees. It does not appear affirmatively in the case in what securities the capital sum was originally invested or when any investment or conversion of them occurred; but the evidence shows that in 1880 it was represented in unequal proportions by United States bonds, bonds of the cities of New York and Brooklyn, bonds and mortgages on real estate, and the sum of $3,424.95 in cash. The cash seems to have been the result of an increase in the value of some securities paid, exchanged or converted by the trustee prior to 1880. In April, 1880, an order was made by the Supreme Court in a proceeding instituted by Robert Goelet and Ogden Goelet, who, with Elbridge T. Gerry, had succeeded to the said trusteeship under the will of Peter Goelet, who died in 1879, to ascertain the amount of said fund, the securities in which it was invested, and to obtain their discharge from the duties and obligations of said trusteeship, upon the delivery of said trust funds to their associate, Mr. Gerry. Jean B. Goelet and Mr. Gerry were both parties to this proceeding, and acquiesced in the order of the court appointing Mr. Gerry sole trustee, and defining the securities and capital of the trust fund as it then existed.

It may fairly be assumed from the evidence that this fund has always been kept invested in securities, upon which there was a fixed rate of interest, payable annually, determinable by the provisions of the security ; and that it has never been possible for the trustee to receive or secure therefrom any extra dividends, or any greater annual income, than that pro-

ducible, by fixed rates of interest. A sale of these securities by the trustee after the death of the life-tenant resulted in a surplus of nearly $23,000 over the amount of the original investment, and this sum is claimed respectively by the representatives of the life-tenants, and by the remaindermen.

The primary rule for the determination of questions arising upon the construction of wills, is the ascertainment of the intent of the testator, from a consideration of its provisions. In the case in hand the will provides specifically for the interest which the legatee for life was to take in the fund, and it is limited to the " annual interest, income and dividends thereof." All beyond this must, from necessity, have been intended to go to the remaindermen, for there are no other persons who could lawfully take it.

This case is not analogous to, and presents none of the questions or embarrassments attending the division of gain or profits, arising upon investments in trade, or the stock of corporate business enterprises, and which are usually represented by dividends, either regular or extra, payable in cash, stock or scrip, or remaining undivided in the hands of the corporation. The authorities in such cases are very numerous and show that it is often a matter of great difficulty to distinguish with precision, between those gains constituting an accretion to the fund and those which legitimately may be termed the earnings of the investment, properly distributable by way of dividends to the stockholders of the corporation. In this case, however, the investment is directed to be made in securities bearing a fixed rate of interest which can neither be increased by the prosperity, nor diminished by the misfortunes of the debtors, and are eventually to be satisfied by the repayment of the principal sum of the obligation.

At the time of the conversion of this fund by the trustee he held in his hands obligations which, upon their face, called for the repayment to him of the sum of $70,000 only, and the purchasers from him received obligations which, at maturity, were redeemable by the obligors at that sum. The cause occasioning the increase in question, seems to have been a deprecia-

tion in the rate of interest effected by natural causes, and which gave an increased value to securities bearing the higher rates of former times. This constituted in no sense a profit upon the investment, but was an accretion to the fund itself arising from natural causes, and was liable to be altogether lost by the approximation of the securities to the period of their maturity. The benefit derivable from this condition was enjoyed annually by the beneficiaries of the fund in the increased value of the income derivable therefrom. Had the life-tenant lived to the maturity of the bonds she would have received in annual interest the entire difference, if any existing at any time prior thereto, between the face and market value of the securities.

The theory of the will did not contemplate any traffic in securities by the trustee, but a permanent investment in interest-bearing obligations, subject to be sold or exchanged only when the exigencies of the trust required it to be done.

It is quite clear that the life-tenant could not have compelled the trustee to sell or convert securities lawfully purchased and held, upon the ground that their market value had appreciated in his hands, any more than he could have compelled her, to make good any depreciation in the value of such securities. Their acquisition and retention was one of the objects contemplated by the will of the testator, and was essential to execute his design, and a proceeding to compel their sale would plainly have been contrary to his intent in creating the trust. If the will had required the trustees to invest in real estate, the rents, income and profits of which were made payable to the life-tenant with remainder over, it cannot be questioned but that any increase of the value of the land from natural causes would have been an accretion to the capital, and inured to the benefit of the remaindermen (Perry on Trusts, § 545, p. 486 ; *Cogswell* v. *Cogswell*, 2 Edw. Ch. 231, 240), and we can see no difference in principle between this case and the one supposed.

The question here presented was up in the cases of *Townsend* v. *U. S. Trust Co.* (3 Redf. 222), and *Whitney* v. *Pharis* (4 id. 180), before the surrogate of New York, and it was there

held that an enhancement of the value of United States bonds
held in trust went to the remaindermen, and not to the legatee
for life.    These decisions accord with our views.

The cases cited by the learned counsel for the appellant may
all be classified as cases where the terms of the trust authorized
investments in the stock of private corporations or trading en-
terprises whose profits are largely affected by the vicissitudes
of business and trade, and the disposition of whose gains and
profits is largely, if not wholly, left to the discretion of the
managers of the enterprise.    In such cases it was plainly the
intention of the settlor that the life-tenant should have the
advantage of any extraordinary profits realized from the invest-
ment.    As we before said, these cases are not analogous.

The circumstance that the trustee in this case at some time in-
vested a portion of the funds, in unauthorized securities, would
not seem to have effected any change in the respective rights
of the life-tenant and remaindermen in the *corpus* of the
trust.    When the fact came to their knowledge in 1880 they
each and all seem to have acquiesced in and approved the
action of the trustee in making the investment, and it cannot
now be objected on the part of either of them, that any
interest of theirs was thereby varied or changed.    It was
optional with those parties at that time, by taking appropriate
proceedings for that purpose, to have required the defaulting
trustee to invest the fund in the securities specified in the will,
or made compensation in some other form for the damages, if
any, occasioned by his wrongful act ; but it was also compe-
tent for them to ratify and approve the action of the trustee
by accepting the securities held by him as representing the
trust fund, and this we think was determined by the proceed-
ings taken to release Robert and Ogden Goelet from the
duties of trustees under the will.    The action of the trustee
in making the investments in question was sagacious and
inured to the benefit of all the parties concerned, and they
should not, after long acquiescence in such dealing, be al-
lowed to obtain an advantage by questioning its legality.

But, further than this, we think the securities in which the

funds were actually invested by the trustee until changed by some proceedings taken for that purpose, so far as the beneficiaries were concerned, represented the trust fund, and their earnings, income and increase would, as between the several parties interested therein, be subject to the same rules of division and distribution as though it had been invested and kept on interest, in accordance with the terms of the will. The remaindermen could not thereby be deprived of a natural accretion to the fund, however invested, or the life-tenant become entitled to an increase which, if the fund had been lawfully invested, would not have accrued to her. Indeed, in prosecuting this proceeding the representatives of the life-tenant have ratified the acts of the trustee in making the investment in question by treating the unauthorized securities as the *corpus* of the fund and claiming their increased value as income earned by the employment of the capital. In other words, while claiming the advantage to be derived from the unauthorized act of the trustee, they insist that such act was the efficient cause of transferring what was otherwise an accretion to the fund, going to the remaindermen, into profits accruing to the life-tenant.

The life-tenant was not the sole party interested in the determination of this question, and inasmuch as she, during her life-time, and the remaindermen, also, acquiesced in and approved the conduct of the trustee in making the investment, her representatives should not now be allowed to acquire an advantage by denying the lawfulness of his proceeding.

The judgment of the court below should be affirmed, without costs to either party.

All concur.

Judgment affirmed.