FIFTH DEPARTMENT, MARCH TERM, 1895.          [Vol. 85.

In the Matter of the Judicial Settlement of the Accounts of EMILY C. PROCTOR, Administratrix, etc., of JOHN BIDEN, Deceased.

ELIZA E. SMITH and Another, as Executrices, etc., of EMMA· BIDEN, Deceased, Appellants; EMILY C. PROCTOR, as Administratrix, etc., of JOHN BIDEN, Deceased, Respondent.

*Will — life interest in bonds — "premium," not covered by "profits."*

The will of John Biden gave to his wife during the period she should remain his widow " the interest, income and profits of the sum of six thousand dollars, which interest or income shall be payable to her at the times the same accrues on the investment of said six thousand dollars." In a subsequent provision of his will the testator directed as follows: "My executors shall keep invested safely and securely the said six thousand dollars in good approved securities as long as my wife shall be entitled to the interest thereof."

The executors invested the sum in bonds which, upon the death of the wife, were sold at a considerable advance over the sum paid therefor, and this premium was claimed by her executors as assets of her estate.

*Held,* that the words "interest, income and profits" were tautological, and that it was not the intention of the testator that an accretion to the fund resulting from natural causes should become a part of his wife's estate;

That under a proper construction of the clauses given above, the use of the word "profits" did not carry with it a premium, the amount of which was uncertain and materially dependent upon the length of time the widow lived.

APPEAL by the contestants, Eliza E. Smith and Maud Smith, as executors in England of the last will and testament of Emma Biden, deceased, from so much of a decree of the Surrogate's Court of the county of Monroe, entered in the office of the surrogate of Monroe county on the 11th day of July, 1894, as disallowed their claim to a surplus of $1,620, resulting from a sale of certain bonds by Emily C. Proctor, as administratrix of John Biden, deceased.

*Waldo G. Morse,* for the contestants, executors in England of Emma Biden, appellants.

*W. Martin Jones,* for Emily C. Proctor, administratrix of John Biden, respondent.

BRADLEY, J.:

By his will, John Biden, deceased, gave to Emma Biden during the period she should remain his widow " the interest, income and

profits of the sum of six thousand dollars, which interest or income shall be payable to her at the times the same accrues on the invest ment of said six thousand dollars."

The executors of his will invested such sum of $6,000 in Rochester city water bonds, upon which the widow received the interest up to January 1, 1894, at the rate of seven per cent per annum. She died February 11, 1894. At that time the bonds were worth a premium of twenty-seven per cent, and were afterwards sold by the administratrix with the will annexed for $7,620. The surrogate determined that the representatives of the widow deceased were not entitled to the premium received upon the sale of the bonds. From the portion of the decree to that effect this appeal is taken. They were allowed interest upon the bonds from January 1, 1894, to the time of her death. The controversy arises upon the use of the word "profits," the purpose intended by it in the connection in which it appears in the will and in its relation to the fund invested. The income of the fund evidently was intended for the beneficial enjoyment of Mrs. Biden while she should remain the widow of the testator. It is urged that something more was intended by the testator, and in support of that view reference is made to the provision of the will that the "interest or income shall be payable to her at the times the same accrues on the investment," and to the fact that in such direction the word profits is omitted. There is, however, nothing in the purport of the will manifesting an intent that profits as distinguished from current income should become part of her estate after her death. The use of the expression interest or income instead of "interest and income" as first used in the will and the subsequent provision "that my executors shall keep invested safely and securely the said six thousand dollars in good approved securities as long as my wife shall be entitled to the interest thereof" tend to show that the terms interest and income are synonymously used, and that the design was that the product of the fund should and would be interest. And while the interest or income as well as increased value of the securities may be treated as profit, that term in common parlance is the pecuniary advantage resulting from dealing or trafficking in property. It is evident that the testator did not intend that the fund should be used in that way, because he directed that it should be invested in securities as long as Mrs.

Biden should remain his widow and that his executors should "have the care, custody and control of the same during that time." Although on the termination of the legacy the testator bequeathed "three-fourths of said six thousand dollars" in one direction, and one-fourth of the same in another, this does not seem to have any significance on the question under consideration as the will contains a residuary clause.

It is very likely that no accretion to the fund was contemplated when the will was made. The purpose was the investment of it in interest-bearing securities. The interest would be a fixed rate upon a definite sum payable at some time in satisfaction of the obligation. The rate of interest on the bonds in question was so large, and the death of the legatee so long before their maturity that they then commanded a premium in the market. It had been higher and would continue to diminish until the value of the securities settled to par.

It could not be ascertained what, if any, the accretion would be until the termination of the widow's relation as legatee. And it is difficult to see in the will any indication of a purpose that such increase in value to be ascertained after and as of the time of her decease, should be treated as profits and go to her personal representatives. The legacy in view by the testator was evidently intended for the use and enjoyment of the widow. It is not seen that by the terms of the will this accretion as of the time of the death of the widow was a situation or product contemplated by the testator or intended to be covered by the use of the word profits, nor does such seem to be the fair intendment of the words "interest, income and profits," applicable as they were to the investment of a fund in securities bearing a fixed rate of interest payable to the legatee as it accrued. The more reasonable view of the words of that expression is that they were tautological. And upon the question of their application to the increased value of the fund, this case comes within the principle of cases heretofore determined by the courts of this State. (*Matter of Gerry*, 103 N. Y. 445; *Matter of Clark*, 62 Hun, 275; *Duclos* v. *Benner*, Id. 428; 136 N. Y. 560; *Cross* v. *L. I. L. & T. Co.*, 75 Hun, 533; *Matter of Vedder*, 42 N. Y. St. Repr. 300; S. C. *sub. nom. Matter of Clark*, 62 Hun, 275.)

If such had been the purpose of the testator he could by some

expression to that effect in the will have included a bequest of any increase in value of the capital which might arise from the investment.

But the principal sum of the bonds belonged to the estate of the testator, and there, is nothing in the will to take it out of the general rule on the subject that the increment from natural causes is regarded as a part of the capital or principal fund, and goes to the remainderman or residuary legatees.

The decree of the surrogate should be affirmed.

DWIGHT, P. J., and LEWIS, J., concurred.

Decree of surrogate affirmed.