FRANKEL v. FARMERS' LOAN & TRUST CO. et al.

(Supreme Court, Appellate Division, First Department.  July 11, 1912.)

1. TRUSTS (§ 193½*)—SALE OF PROPERTY—RIGHTS OF CESTUI QUE TRUST AND REMAINDERMEN.

A testator devised the bulk of his estate in trust, "the whole of the net income" to be paid to his wife during her life and to his daughter after the wife's death.  He also authorized the withdrawal at the option of the wife of so much of the corpus of the trust estate as she should consider necessary for the care and support of her and the daughter, not exceeding $100,000.  He further provided that loss of premiums upon investments or securities should be imposed on the remaindermen, and not on the beneficiaries, that the trustee should not reserve any portion of the income to make good the wearing away of premium or the amount paid for premium, and that there should be no amortization.  The principal asset of the estate consisted of three leasehold estates, the value of which necessarily decreased as the date of expiration drew near.  *Held*, that the will indicated that the controlling intention of the testator was to provide for the wife and daughter, and in view of the express provision that nothing should be reserved from the income to make good premiums or for amortization, although possibly this did not directly apply to leaseholds, the leaseholds should not be sold before their expiration, but the entire income therefrom should be paid to the wife.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 246, 248; Dec. Dig. § 193½.*]

2. TRUSTS (§ 276*)—POWER TO USE CORPUS—EXERCISE.

A testator devised his property in trust for his wife during her life, and, after her death, for his daughter, and authorized the trustees to take from the corpus of the estate so much as the wife should direct and give it to the daughter absolutely.  *Held*, there being no express limitation on this power of appointment given to the wife, that she might exercise it as often as desired, even if it resulted in the complete destruction of the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 394, 395; Dec. Dig. § 276.*]

Appeal from Special Term, New York County.

Action by Hattie G. Frankel individually, and as executrix of, and trustee under, the will of Simon Frankel, against the Farmers' Loan & Trust Company, as executor and trustee, and others, for a construction of such will.  From the judgment the defendant named appeals.  Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Frederick Geller, of New York City, for appellant.

Henry L. Moses, of New York City, for respondent Hattie G. Frankel.

Mark G. Holstein, of New York City, for respondent Charlotte Frankel.

SCOTT, J.  Simon Frankel, a resident of the city of New York, died May 17, 1911, leaving a last will and testament, which was duly admitted to probate in the county of New York.  He left him surviving a widow, the plaintiff herein, and a daughter, Charlotte Frankel,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

who is a defendant. By the second clause of his will he gave to his wife absolutely all of his household effects, household furnishings, pictures, paintings, bric-a-brac, "and all other articles used in the conduct of our home." The third clause reads as follows:

"Third:—I give, grant, devise and bequeath all the rest, residue and remainder of my property, and estate, both real and personal, of every name, nature and description, and wheresoever situated, of which I may die, seized, possessed of or entitled to, either in fee, reversion, remainder or otherwise, unto the trustees hereinafter named, as trustees, and in trust only, to and for the following uses, intents and purposes, to wit: My said Trustees, or the survivor of them, shall take possession of and have and hold in trust said entire residuary and trust estate, and manage, control and invest the same, and collect and receive all the interest, income and profit derived from the investment thereof, and pay the whole of the net income derived therefrom, semiannually, to my beloved wife Hattie G. Frankel, for and during the term of her natural life, for her own use, maintenance, support and comfort."

Upon the death of the wife the residue of the estate was given to the defendant Farmers' Loan & Trust Company, in trust for the daughter during her lifetime, at her death to go to her issue, if any, and, failing such issue, to collateral relatives of the testator. The sixth clause reads as follows:

"Sixth—In the event that my daughter shall not have married during my lifetime, then notwithstanding anything herein contained to the contrary, I do authorize and empower my executors and trustees hereinafter designated to take out of and from my said estate so much thereof as my said wife shall direct, and as to such part of my estate, the said trust shall cease, and I do give, grant, devise and bequeath such part unto my said daughter Charlotte Frankel, absolutely and forever."

The seventh clause of the will authorized at the option of the wife the withdrawal from time to time from the corpus of the trust estate of—

"so much thereof as she shall deem necessary beyond the income of the said trust, for the proper maintenance, care, support and education of my said wife and of my said daughter, provided always, that the aggregate of the amount so withdrawn from my said estate shall not exceed One hundred thousand ($100,000) Dollars, and thereupon and upon the direction of my said wife, I do give, grant, devise and bequeath the said sums and the aggregate thereof, and each of said sums unto my said wife absolutely, and as to the said sum so withdrawn (if any), the said trust shall cease and determine."

The testator's wife and the Farmers' Loan & Trust Company were appointed executors of the will and trustees thereunder and were given complete discretion as to the securities in which the estate should be invested. The thirteenth clause reads as follows:

"Thirteenth.—In making distribution and division of my said estate it is my intention to impose the loss of premium upon investments or securities upon those who shall share, in the final distribution of my estate or upon the remaindermen, and not upon the beneficiary of my said trust herein set forth or the cestui que trustent, and that my trustees shall not reserve any portion of the income to make good against the wearing away of premium or the amount paid for premium, nor shall there be any amortization."

Two questions have arisen, as to which the trustees entertain opposing views, and which the court is called upon to answer. The

testator at the time of his death was the owner of three leasehold estates, to wit:  (1) A lease of No. 27 Maiden Lane and 59–61 Nassau street, in the city of New York, expiring May 1, 1917; (2) a lease of No. 450 Fifth avenue, in the city of New York, expiring May 1, 1926; (3) a lease of No. 420 Fifth avenue in the city of New York expiring April 1, 1920.  The estimated value of these leaseholds at the time of the testator's death was $158,706.44.  The net annual income from these properties is $22,636.56, and they constitute at present the chief source of income to the plaintiff and her daughter.

[1] The first question is whether it is the duty of the trustees to sell these leasehold estates (the capital value of which decreases as the date of expiration draws nearer), or whether the plaintiff and her daughter after her decease are entitled to insist that the leaseholds be retained as a part of the trust estate, and that they, in turn, receive the net income therefrom.  The contention on the part of the appellant is that it is the duty of the trustee to presently sell the leaseholds, which are securities of the character commonly known as "wasting" securities, and to invest the proceeds in permanent securities, paying to the life tenant only the net income of such substituted securities, or, if the leaseholds are to be retained as investments, that only a part of the net receipts are to be regarded as "net income," the remainder being retained and accumulated to make good the capital at the termination of the trust.

It is no doubt a general rule that, where trustees or executors find a portion of the estate invested in what are termed "wasting" securities, they should pay to the life tenant only so much of the income as represents a fair return upon the capital value, accumulating and retaining the residue for the benefit of the remaindermen.  Howe v. Earl of Dartmouth, 7 Vesey, 137; Cairns v. Chaubert, 9 Paige, 160; Kinmouth v. Brigham, 5 Allen (Mass.) 270.  This rule is not rigid, however, and yields readily when it can be seen from the will itself, read in the light of the surrounding circumstances, that the testator entertained a different intention.  (2 Jarman on Wills [6th Ed.] p. 1245; Perry on Trusts [6th Ed.] § 450), for, as was observed by the latter author:

"If the testator conferred upon the remainderman only the possible chance of taking what might be left by the tenant for life unexhausted, the remainderman will receive all that was intended for him and has no right to complain."

In the present case it is worthy of note that the only living persons named in the will as remaindermen, to wit, the testator's brother and his wife and daughter, although joined in the action, take no part in the controversy, and do not contend for the position assumed by the defendant Trust Company.

The testator is shown to have been an astute and successful business man.  He was president of and a large stockholder in two corporations concerned in the business of dealing in diamonds and precious stones, for which he had received salaries and, until the year 1907, large returns by way of dividends.  Since the year 1907 and consequent, as it is believed, upon the financial disturbances of that year,

these dividends have not been realized. He was also the holder of stock in a Realty Company, which paid in his lifetime and has paid since his death an income of about $7,000 per annum. He owned other stocks of comparatively little value and certain unimproved and unproductive real estate besides the leaseholds in question. This was practically the condition of his estate when the will was made on November 1, 1910, as well as at the time of his death of May 17, 1911. He maintained a large and expensive residence in the city of New York, kept automobiles, and traveled abroad every year with his wife and daughter; his expenditures for maintenance and living approximating annually about $45,000. It is apparent from his will that his primary and controlling intention was to provide for his wife and daughter, and it is fairly inferable that it was his desire that, so far as possible, they should continue to live in the same manner in which he and they had lived during his own lifetime. In the bequest of his household effects to his wife, he speaks of them as the articles and things used in the conduct of our "home," and in the seventh clause of the will he authorizes his wife to encroach to the extent of $100,000 upon the principal of the estate if she shall deem it necessary to supplement her income thereby. When he comes to direct the payment of income to his wife, his language is unusually emphatic. He is not content to direct the payment of the net income to her, but directs that she shall be paid "the whole of the net income," a direction that is quite inconsistent with the proposition of the defendant Trust Company that only a part of the net income be paid to the plaintiff, and that the remainder be retained and accumulated. So in the thirteenth clause he makes careful provision that no part of the income securities shall be reserved for the benefit of the remaindermen to make good the wearing away of premiums, or the amount paid for premiums, or for amortization. It is quite possible, as the appellant insists, that this clause does not directly apply to the case of the leaseholds, but, nevertheless, it illustrates the general intention of the testator that his wife, and, after her, his daughter, shall reap the greatest possible advantage from the enjoyment of his estate, and that the interests of the remaindermen shall be subordinated to theirs. We think that the court at Special Term was entirely right in the conclusion it arrived at upon this branch of the case.

[2] The second question is as to the extent of the right of the widow to exercise more than once the power given her by the sixth clause of the will (quoted above) to designate sums to be paid to the daughter out of the principal of the estate. In her complaint the plaintiff, who is at once a trustee and the donee of the power, states that she has already directed and appointed that property to the value of $100,000 should be withdrawn from the estate to become the absolute property of her daughter, Charlotte Frankel, and that this direction has been carried out. She further alleges that she desires to exercise her said power of appointment by directing and appointing that further property be withdrawn from the estate to become the absolute property of said Charlotte Frankel, but that her cotrustee, the Farmers' Loan & Trust Company, considers it doubtful whether

the said power of appointment can be exercised by successive appointments, or whether plaintiff is confined in its exercise to a single appointment. She asks the instruction of the court upon this subject, as does her cotrustee, the Farmers' Loan & Trust Company, in its answer. The sixth clause itself contains no limitation upon the power of appointment given to the plaintiff, and the general rule is that, when such a power of appointment is given, it may be executed by different appointments made at several times. Farewell on Powers (2d Ed.) p. 164; Sugden on Powers (8th Ed.) p. 272; Chaplin on Express Trusts and Powers, p. 451; 4 Kents' Comm. 334; Crooke v. County of Kings, 97 N. Y. 421. It is objected, and, of course, is apparent, that such a construction may result in the complete destruction of the trust. But what of it, if the will so provided? Of course if the wife had died before the testator, no such destruction of the trust could have occurred, and it may well be that the testator reposed such confidence in his wife's judgment that he was willing to leave in her hands, if she chose to exercise it, the power to withdraw the entire estate from the trust and bestow it upon her daughter. Similar exhibitions of confidence are not rare. We think that this question also was rightly answered at Special Term.

Our conclusion is that the judgment appealed from must be affirmed, with costs to all parties who have appeared and filed briefs payable out of the estate. All concur.