BOSTON SAFE DEPOSIT & TRUST CO. AND EVERETT E. KENT, EXECUTORS, ESTATE OF HERBERT A. WILDER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32131.   Promulgated October 3, 1930.

*Harris H. Gilman, Esq.*, for the petitioners.
*F. T. Horner, Esq.*, for the respondent.

## OPINION.

Murdock: The sole question presented in this case is the amount, if any, which should be deducted in determining the net estate under section 403(a)(3) of the Revenue Act of 1921 to represent the value of the residuary estate which is left to certain ·charitable organizations. There is no dispute as to the character of the organizations and institutions named as residuary legatees. The provisions of ·the will do not create a situation where the birth of one child causes a gift over and thereby defeats the gift to charity. Cf. *George E. Farrington et al., Executors*, 13 B. T. A. 274. The respondent contends that the number of grandchildren who may be born can not be determined, the expenses to be paid can not be determined, the corpus of the residue may be invaded, $25,000 may be used in certain cases of necessity and, therefore, it is impossible to determine the present value of the amount, if any, which the charitable organizations will receive. He allows no deduction in this connection.

The probable necessary expenditures in connection with the Newton and Lebanon properties are determined accurately enough from the evidence of similar expenditures made in the past and ample allowance is made therefor in the computation suggested by the petitioner. Cf. *Herron* v. *Heiner*, 24 Fed. (2d) 745. The possibility that the corpus might be invaded is too remote to require discussion. The only uncertainty which might defeat the petitioners' claims is that of the number of after-born grandchildren.

The petitioners claim that the whole question is one of valuation, because in any event the charities will receive something. They first point out that a fund having a value of $140,000 on October 12, 1923, would go to the charities after adequately allowing for all payments mentioned in the will, including annuities to forty grandchildren born immediately after the testator died. It is, they say, ridiculous to assume that forty grandchildren would ever be born to the three daughters, but they point out that if forty were not born at once, even more than forty could be born over a period of time without reducing the value of the $140,000 gift to charities. The computation by which they support this contention is based on figures and facts in evidence and makes a strong appeal to reason. It is set forth in the following paragraph.

The petitioners start with $968,702.49, the net estate subject to tax as determined by the Commissioner, which was the gross estate

less debts, administration expenses, funeral expenses, cash bequests to charities, bequests to charity of the remainder of the realty in Newton and Lebanon, the fund necessary to produce annuities given to a church, and also the statutory exemption of $50,000. In this way the gross estate was reduced by $248,907. They then deduct the stipulated value of specific bequests, the stipulated value of annuities to the three daughters, the stipulated value of annuities to others, including pew rent, the stipulated value of a fund to provide a salary for an individual, the stipulated value of annuities to the three living grandchildren, and the stipulated amount of the sickness fund given by paragraph (d) of the "Sixth Item" of the will. The amount thus deducted they claim will pay all amounts necessary in carrying out all provisions of the will except paying the necessary expenditures for the Newton and Lebanon houses and the annuities which would have to be paid to the grandchildren born after the death of the testator. To meet these two latter requirements of the will, a fund of $439,439.08 would be left. The annual income of such a fund at 4 per cent would amount to $17,577.56. From past experience they determine that the annual amount necessary to meet the requirements of the will in connection with the Newton and Lebanon houses would not exceed $4,000. The remaining income would be sufficient to provide annuities for forty-five grandchildren, even if all of the forty-five grandchildren could by any possibility be born in the year of the death of the testator. If during the first year the full number of forty-five grandchildren were not born, the number of grandchildren who could be provided for by this fund would materially increase in each year thereafter. The remainder value of the fund of $439,439.08 after the lives of the three daughters, computed by use of the stipulated factor, would give a then present value to this remainder of $140,001.77. This remainder is the fund which would be used exclusively for charitable and educational purposes under the "Sixth Item."

There is a legal presumption that so long as a woman lives she may always give birth to a child. *George E. Farrington et al.,* *Executors, supra.* Cf. *Humes* v. *United States,* 276 U. S. 487. But this exceptional case is materially different from those cases, at least in the effect which the birth of one child has upon the charitable bequest. Of course a child might have been born to any of the three, and if we had to determine just how many might possibly have been born, our problem would be too difficult for human judgment and knowledge. But if we can determine that in all reasonable probability not more than a certain number would be born, the petitioners, on whom rests the burden of proof and on whom we must bear heavily, would be entitled to a minimum deduction. Cf. *Cohan*

v. *Commissioner*, 39 Fed. (2d) 540. There are facts before us from which we may determine, with reasonable certainty, at least a minimum deductible value for the bequests to charity. "There is no uncertainty [in determining such value] appreciably greater than the general uncertainty that attends human affairs." *Ithaca Trust Co.* v. *United States*, 279 U. S. 151. There is no presumption that these women will be prolific, and the facts indicate the contrary. Therefore, a finding that the bequest to charity had no substantial value because of the remote possibility that the three daughters might bear children so fast that nothing would be left would be arbitrary and unwarranted under the circumstances of this case. Cf. *First National Bank of Birmingham* v. *Sneed*, 24 Fed. (2d) 186. No undue use of the actuarial art is involved. In fact the respondent has agreed to all of the numerical factors used and they are only used to compute the value of remainders after life estates.

It may be argued that the determination of the value of these charitable bequests is a mere guess about something which can not be determined from any known data, and is, therefore, contrary to the rule laid down by the Supreme Court in *Humes* v. *United States*, *supra*. But in our opinion a different rule should apply in a case such as this, where before we could determine that the bequest to charity had no value, we would have to accept the possibility that these particular women might, within one year after their father's death, give birth to a total of more than half a hundred children or that they might give birth to a total of more than three score children during their lives. Such a possibility is shocking to the intelligence. Common sense and good judgment urge its rejection because it is too remote and unlikely. In rejecting this possibility we are not going contrary to any rule required by practical necessity or social conditions as, for example, the rule of law which required our decision in the *Farrington* case.

The petitioners having made their first point that at least they are entitled to deduct some value, next contend that they are entitled to deduct the value on October 12, 1923, of the amount which in all reasonable probability the charities would ultimately receive. They offered the testimony of the family physician who had attended the three daughters and was familiar with the physical condition of each before and during 1923. He said that the oldest daughter remained alone much of her time and was not at all likely to marry. In his opinion the birth of a child after October 12, 1923, to either of the two older daughters was extremely improbable. Two of the daughters were unmarried at that time. Unmarried women of their respective ages would not be likely to have a great many children. The married daughter had had three children. Her youngest child was

five years old when the testator died. The condition of this daughter in 1923 was such, due to an injury from the birth of her last child, that the birth of another child was extremely unlikely in the opinion of the physician. No more children had been born to any of the daughters up to February 28, 1930.

They, therefore, say that although it was not reasonable to suppose that five children would be born to the three daughters after October 12, 1923, they accept this number as a safe maximum. From the fund of $439,439.08, which remained after the previous deductions, and from which provision would have to be made for the upkeep of the two properties and for after-born grandchildren, they deduct the present worth of a fund which during the lives of the three daughters would, at 4 per cent, produce income of $4,000 a year, a more than ample amount to take care of the Newton and Lebanon properties. They then deduct the present worth of the fund necessary to pay an annuity of $300 to each of five grandchildren born after the death of the testator, and in this way they determine that $345,745.48 would be the present worth of the fund which must necessarily under these circumstances go to the charities. Throughout this computation, except in two instances, the petitioners have given away the benefit of every doubt and have proceeded by the use of methods and figures which keep the value of the bequest to charity at a safe minimum. In deducting the $50,000 exemption before they began their computation, they have denied themselves unnecessarily. We see no reason why this amount should be deducted inasmuch as there is certainly going to be no duplication of exemptions. Furthermore, it is not necessary to suppose, as they do, that all the after-born grandchildren would be born immediately upon the death of the testator. One instance in which the petitioners have not allowed a sufficient margin is in their assumption that five grandchildren would be a safe maximum, and, second, they have not allowed anything for expenses of administration of the trust. But these deficiencies in their computation are more than made up by generous allowances in other ways, some of which we have mentioned. The possibility that these three women would give birth to sufficient children after October 12, 1923, to reduce the value of the bequests to charity below the amount now claimed by the petitioner is so remote that it need not be given consideration in the decision of this case. Grandchildren could be born with incredible rapidity and in improbable numbers without impairing this value. We hold that the petitioners are entitled to deduct $345,000 in addition to the deductions already allowed by the Commissioner.

*Judgment will be entered under Rule 50.*