### COLT et al. v. DUGGAN et al.

District Court, S. D. New York.

Sept. 16, 1938.

Sullivan & Cromwell, of New York City (Norris Darrell and John F. Dooling, Jr., both of New York City, of counsel), for plaintiffs.

Lamar Hardy, U. S. Atty., of New York City (John W. Burke, Jr., Asst. U. S. Atty., of New York City, of counsel), for defendants.

MANDELBAUM, District Judge.

The complaint consists of two causes of action. The first seeks a refund of income taxes paid by the plaintiffs as trustee under the last will and testament of Richmond Talbot in the amount of $19,438.96 for the fiscal year ended April 30th, 1933. The second seeks the refund of similar income taxes paid for the fiscal year ended April 30th, 1934, in the amount of $139,-650.58.

Both alleged causes of action are predicated upon the alleged erroneous disallowance by the Commissioner of Internal Revenue of deductions from gross income of trust income claimed to be permanently set aside for charitable uses under Section 162(a) of the Revenue Act of 1932, 26 U.S.C.A. § 162(a).

The defendants' answer denies that the trust income was permanently set aside for charitable uses pursuant to the will creating the trust.

The defendants, by this motion, attack the sufficiency of the complaint.

The pertinent facts that appear from the pleadings are the following:

The testator died on May 26th, 1932, a resident of the State of New York, and his will, dated October 15th, 1931, was duly admitted to probate on June 28th, 1932, in the Surrogate's Court of Orange County, New York. The estate and the trusts therein set up are accordingly governed by the law of the State of New York. The plaintiffs are the duly qualified executors and trustees of certain trusts contained in said will and have been at all times acting as such.

In the fiscal year ended April 30th, 1933, the plaintiffs derived a gain in the amount of $72,419.06 from the sale of estate assets and from the liquidation of a corporation, The Richtal Company, the stock of which was wholly owned by the testator. The plaintiffs, as fiduciaries, filed on July 15th, 1933, their income tax return for the fiscal year ended April 30th, 1933, in which they reported this gain and paid a tax thereon amounting to $15,430.06.

During the fiscal year ended April 30th, 1934, the plaintiffs derived a gain from the same sources in the amount of $239,311.55 and in their income tax return filed July 16th, 1934, they deducted the amount of the gain during the year 1934 on the ground that it had been permanently set aside by them pursuant to the will of the testator for Harvard College and Phillips Exeter Academy. The Commissioner of Internal Revenue disallowed the deduction and assessed a deficiency against the estate for the year 1934 in the amount of $146,474.62. The plaintiffs paid the deficiency and thereafter filed claims for refund of the taxes paid upon these gains for both 1933 and 1934. The basis for the claims for refund was that the gains were added to the corpus of the estate and permanently set aside for charitable uses. These claims were rejected on the ground that the gains were not and could not be permanently set aside for charitable purposes, pursuant to the terms of the will. The present suit therefore, is brought to recover the amount of income taxes resulting from the disallowance of the claimed deductions.

The statutes involved in this suit are: Sections 162(a) and Section 23(n) and subdivisions of the Revenue Act of 1932, 26 U.S.C.A. §§ 162(a), 23 note.

"§ 162. Net income.

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance, or operation of a public cemetery not operated for profit;"

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"* 	*	*	*	*	*

"(n) Charitable and other contributions. In the case of an individual, contribution or gifts made within the taxable year to or for the use of:

"(1) the United States, any State, Territory, or any political subdivision thereof, or the District of Columbia, for exclusively public purposes;

"(2) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation;

"(3) the special fund for vocational rehabilitation authorized by section 440 of Title 38;

"(4) posts or organizations or war veterans, or auxiliary units or societies of any such posts or organizations, if such posts, organizations, units, or societies are organized in the United States, or any of its possessions, and if no part of their net earnings inures to the benefit of any private shareholder or individual;

"(5) a fraternal society, order or association, operating under the lodge system, but only if such contributions or gifts are to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals; to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's net income as computed without the benefit of this subsection. Such contributions or gifts shall be allowable as deductions only it verified under rules and regulations prescribed by the Commissioner, with the approval of the secretary. (For unlimited deduction if contributions and gifts exceed 90 per centum of the net income, see section 120)."

The will, essentially, provides the following:

The testator gave $500,000 in trust for his mother with contingent remainders of $125,000 of the principal to four individuals. All the rest, residue and remainder, including lapsed contingent remainders, were directed to be added to his residuary estate (Paragraph first of will).

The testator gave general legacies of about $62,500 to a number of individuals and institutions (Paragraph fourth of will).

The testator gave his trustees $130,000 in trust for six individuals. The remainders from five of the trusts, aggregating $100,000 were directed to be added to his residuary estate (Paragraph fifth of will).

The testator specifically bequeathed to his mother personal property valued at $30,522.50 (Paragraph seventh of will).

The testator conveyed his real property (Orchard Hill Farm) to his trustees for the life of Minnie E. Koelsch, or until she should become incapacitated or should otherwise elect to terminate the trust, to be operated by her as a vacation retreat for poor children (Paragraph ninth of will).

The testator gave all the rest, residue and remainder of the testator's property to trustees to hold for the life of Minnie E. Koelsch or until such earlier time as she might become incapacitated to act or elect not to act as specified in paragraph "ninth" of the will for the following uses:

(a) To pay not more than $35,000 annually from the income of the trust for the maintenance of Orchard Hill Farm;

(b) To pay $4,000 annually from the income to Minnie E. Koelsch;

(c) To pay $500 to each of two individuals; and

(d) To pay all the rest, residue and remainder of said income to and among such charitable institutions and purposes and in such proportions as Minnie E. Koelsch may designate and direct.

Upon the death of Minnie E. Koelsch or upon the earlier termination of the residuary trust by her incapacity or election, the testator directed that the principal of the trust be disposed of as follows:

1. A sufficient amount of principal should be retained to provide an annuity of $4,000 for Minnie E. Koelsch during her life;

2. All the rest, residue and remainder of the principal should be paid over to Harvard College and Phillips Exeter Academy (Paragraph tenth of will).

The testator authorized his executors and trustees to invest the funds of the estate in their discretion without restriction by the general rules of law applicable to investments by trustees (Paragraph eleven of will).

Paragraph "Twelve" of the will becomes important in ascertaining the intention of the testator, when read in conjunction with the other provisions of the will. It reads as follows:

"Twelfth: *I authorize my trustees to determine whether any moneys, stocks or securities received by them are to be considered as capital or income* (except that stock dividends are to be treated as income) *and whether any expenses, outgoings or other payments are to be paid from capital or income,* and to determine all questions and matters of doubt arising in the execution of the trusts created by this my Last Will and Testament or any codicil thereto, and I declare that every such determination, whether made upon a question, actually raised or implied in the acts or proceedings of such Trustees, shall be conclusive and binding on all persons interested under this my Last Will and Testament or any codicil thereto. * * * I direct that no part of the net income produced by my estate during the period of administration shall be capitalized, but that all such income shall be considered as trust income and distributed accordingly." (Emphasis by the court.)

In the State of New York, it is definitely settled that capital gains derived from the sales of trust assets are added to the corpus, unless the settlor has by unmistakeable language directed otherwise. In re Hagen's Will 262 N.Y. 301, 305, 186 N.E. 792; In re Gerry, 103 N.Y. 445, 449, 9 N.E. 235. The plaintiffs claim that the capital gains so credited to principal were permanently set aside for charitable uses, since under the Will they vested as part of the principal or corpus of the Estate, in Harvard College and Phillips Exeter Academy which under the Will held vested remainders in the entire principal or corpus of the Estate, subject only to the termination of the life interests income and the payment of legacies and expenses. The plaintiffs claim that the capital gains derived from the sales of securities and liquidation of the Richtal Company, are amounts permanently set aside for charitable uses within the meaning of Section 162 (a) of the Revenue Act of 1932, 26 U.S.C. A. § 162(a). In aid of this argument, they said that due to the size and condition of the estate, there is no probability that the legacies to the charitable remaindermen may abate and because the charges against the corpus are definitely limited in amount.

It is the position of the defendants that the law of New York, which treats all gains from the sale of corpus estates

as part of the corpus, has no application in the instant case because of a contrary intent on the part of the testator as evidenced by paragraph "twelve" of the Will. Since it is the law that a testator may dispose of the corpus of his estate (with limitations) or increments therefrom as he sees fit, it becomes necessary to examine paragraph "twelve" together with the entire will structure in order to determine the intent of the testator. Paragraph "twelve" (above quoted at length) authorizes the trustees to determine *whether any moneys, stocks or securities received by them are to be considered as capital or income* (except that stock dividends are to be treated as income) *and whether any expenses, outgoings, or other payments are to be paid from capital or income.* That there is therefore no assurance that either the original corpus or the gains from the sale of corpus assets will be kept intact for the exempt remaindermen; that even if gains from the sale of corpus assets be allocated to corpus, there is no permanency to such allocation since the trustees may at any time determine to disburse the sums allocated for purposes other than exempt uses; that there is therefore no determinable part of the corpus of the estate or the gains thereto permanently set aside for charitable purposes pursuant to the terms of the will.

The defendants cite Chase National Bank v. Chicago Title & Trust Company, 155 Misc. 61, 279 N.Y.S. 327, affirmed, 246 App.Div. 201, 284 N.Y.S. 472, affirmed 271 N.Y. 602, 3 N.E.2d 205; motion for reargument denied, 271 N.Y. 659, 3 N.E.2d 472, in support of their contention claiming that in principle, that case and the one at bar are alike. While that case presented several questions for determination, the one which has any bearing on the issues presented in the instant case is this: The trust instrument provided *that the trustee, with the consent of a committee named therein, should have power to determine all questions whether stock dividends, rights or other things are to be treated as capital or income, and also gave the trustee power to determine the mode in which the expenses of administration of the trust should be borne as between capital and income.* The Trustee, with the consent of the committee, allocated all such stock dividends to the principal of trust, and no part thereof was paid as income of the trust.

The Appellate Division, in the course of its opinion said (246 App.Div. 201, 206, 284 N.Y.S. 472, 478): "The trust agreement gives the committee very broad power, and, reading it as a whole, it seems to place the exercise of discretion as to allocation of all accruals of stock dividends in the hands of the committee. * * * It seems to us that the provisions of the instrument put power well within the province of the trustee to allocate, as it did, with the consent of the committee, the stock dividends here in question to the corpus as capital, and decline to hold them as income."

The Court of Appeals affirmed this determination. Comparing the power granting authority to the trustee in the Chase National Bank Case, supra, with that in the present case, leads the court to the belief that at bar the power vested in the trustees is greater than in the Chase Case. There the settlor of the trust gave his trustee power to determine the mode in which *expenses of administration* of the trust should be borne as between capital and income. Here, the testator granted authority to his trustees to *disburse capital for expenses, outgoings* or other payments. In other words, the trustees are empowered to disburse capital at will, without restriction.

I see no reason to differentiate between the two cases simply because the controversy in the Chase Case arose under a deed of trust, whereas here we are concerned with a will. The power granted the trustees is a valid one and remains so even if the exercise thereof vitiates or destroys the trust structure. This has been so held in Frankel v. Farmers' Loan & Trust Company, 152 App.Div. 58, 136 N.Y. S. 703, affirmed 209 N.Y. 553, 103 N.E. 1124.

The defendants also urge upon the court that the general scheme of the will evidences an intention on the part of the testator not to permanently set aside the capital gains in question for charitable uses, *even* if the trustees allocate the said gains to corpus. A typical example of this intention may be found in paragraph "ten" of the will. The testator, among other things, provided an annuity for Minnie E. Koelsch for life from so much of the principal of the residuary trust as in the judgment of the trustees would be necessary to yield a net income to her of $4000.00 per annum. It thus might become necessary for the trustees to invade the principal so set aside, if the principal set aside in trust

did not produce $4000 per annum. Obviously, moneys realized from the sale of corpus assets would be used for other than charitable uses. Other contingencies in the will might necessitate the use of income, including the gains from sales and profits from liquidation for purposes other than charitable uses and therefore no ascertainable portion of the original principal or of the gains from sales and profits from liquidation was permanently set aside during the taxable year for the two education institutions. The instant case is comparable in theory though not factually to the case of Boston Safe Deposit & Trust Co. v. Commissioner, 1 Cir., 66 F.2d 179. In that case, the testator created a trust of the residue of his estate to pay from the income and so much of the principal as might be needed, certain annuities and sick benefits for his children and grandchildren. The remainder was bequeathed to exempt charitable institutions. During the administration of the estate the trustee realized *profit* from sale of securities of the estate and surplus income after payment of annuities which they claimed to be exempt from tax. The Court held that *no part of the trust fund or the income was permanently set aside for charitable uses.* It said, at page 183: "It is perfectly clear from the provisions of the will that the testator made the specific annuities and expenses a charge upon the entire trust fund, *and not alone upon the income thereof.* He made the payment of the annuities certain, especially to his daughters, as long as there was anything left of the corpus of the trust. No distribution to the charitable or educational institutions named, notwithstanding the Board's decision in 20 B.T.A. 1159, could be made unless there was a sufficient amount left to provide for all the annuities and especially those to his daughters." (Italics by the court.)

At page 184, the principle of law applicable is clearly stated: "Under a will which limits the use of a trust fund to the payment of fixed annuities provided for the testator's daughters, and which may be paid from the corpus of the trust fund before it can be applied to any other use, it cannot be said that 'pursuant to the terms of the will' any part of the gross income 'is to be used exclusively' for charitable and educational uses."

See also Tracy v. Commissioner, 30 B.T.A. 1156. Compare Lederer v. Stockton, 260 U.S. 3, 43 S.Ct. 5, 67 L.Ed. 99; Bow-

ers v. Slocum, 2 Cir., 20 F.2d 350; Hartford-Connecticut Trust Company v. Eaton, 2 Cir., 36 F.2d 710, 711. In those cases the courts held that the income was permanently set aside for charitable uses.

I believe that the words "permanently set aside" for charitable uses as intended under Section 162(a) of the Revenue Act of 1932, 26 U.S.C.A. § 162(a), mean an irrevocable appropriation pursuant to the will to charitable uses. Otherwise, under the guise of a charitable deduction, private individuals may elude taxation.

It is therefore my conclusion that because of paragraph "twelve" of the will as well as the general context of the will, the amount of funds ultimately to go to charitable uses are too indefinite and unascertainable to constitute a "permanent setting aside" for charitable uses.

The complaint is accordingly dismissed.